HAMLET WYNN, Respondent, v. THE WABASH RAILROAD CO., Appellant.

Kansas City Court of Appeals, April 3, 1905.

1. **RAILROADS: Freight Classifications: Maximum Rate: Statutory Construction.** A carrier under the statute prescribing maximum rates for the different classes of freight is permitted to charge any rate provided it is not more than the one prescribed, and is not bound to charge the same rate for each of the different kinds of property embraced in any one class, as, for instance, sheep and mules in class H.

2. ———: ———: ———: ———: **Discrimination.** Discrimination is showing a difference between shippers of the same kind of property and can not exist when all are served alike when asking like service, as for instance, all shippers of sheep are charged the same rate for sheep and all shippers of mules, the same rate for mules.

3. ———: ———: ———: ———: ———. The statute has two objects, to prevent exorbitant charges, and to enforce equality between shippers to a competitive market; and there can be no competition between the different kinds of live stock in class H.

4. ———: ———: ———: ———: **Double Deck Cars.** The expression that there shall not be greater charge for double deck cars than the legal rate for stock, simply means that the charge for double deck car of sheep shall not exceed the maximum rate.

Wynn v. Railway Co.

5. ———: ———: ———: ———: ———: **Like Property.** Putting different kinds of property in the same class did not make them "like property" within the meaning of section 1129, Revised Statutes 1899, the statute merely fixing a maximum rate for every kind of property in that class, without any intention, that the carrier might not charge a less rate for any of the cattle provided all shippers are charged the same.

6. ———: ———: ———: ———: ———: ———. "Like kind of property" as used in the statute means the same kind, although the word "like" may have, in other connections a more restricted meaning.

Appeal from Daviess Circuit Court.—*Hon. J. W. Alexander*, Judge.

REVERSED.

*Geo. S. Grover* for appellant.

(1) There was a compliance, here shown, with the statutes of Missouri, not a violation of them. Hence, the plaintiff was not entitled to recover. R. S. 1899, secs. 1094, 1193 and 1194.

(2) According to the preponderance of testimony here, these sheep were transported to Kansas and delivered there. The statutes of Missouri, therefore, do not apply to this transaction. Stanley v. R. R., 100 Mo. 435.

*James E. Goodrich* for respondent.

(1) The law requiring railroads to transport 20,000 pounds of sheep in a double-deck car at the same price as 20,000 pounds of cattle or hogs is eminently reasonable and just. Emerson v. Railroad, 11 Mo. 161.

(2) Even if the sheep were unloaded in Kansas, it does not constitute the shipment an interstate commerce transaction, as the testimony shows that the point of destination was Kansas City, Missouri; that the sheep pens were located in Missouri; and that the unloading in Kansas was for the convenience of the carrier solely. Scammon, Barclay & Co. v. Railroad, 41 Mo. App. 194-198.

ELLISON, J.—This is an action to recover the penalty provided by section 1094, Revised Statutes 1899, for violating sections 1092 and 1093 of such statute. The trial court gave plaintiff a judgment for $50, the minimum sum allowed in such cases.

Plaintiff had a carload of sheep (20,000 lbs.) if put in a double-deck car, but two carloads if an ordinary car should be used. He desired to ship them from Jamison to Kansas City, Missouri, a distance by defendant's road of 160 miles. Defendant did not have a double-deck car and so furnished him with two ordinary stock cars. The defendant had in force the following rates for shipment of stock: for cattle, 11 cents per 100 lbs.; for horses and mules, $23 per car; for hogs, 13 cents per 100 lbs.; and for sheep (single-deck car minimum load 10,000 lbs.) 17 and 1-2 cents per 100 lbs. This would be a charge of $22 per car of 22,000 lbs. for cattle, $26 for hogs and $35 for sheep. There was no specific mention of a rate for double-deck cars of sheep. But by the statute, sections 1092, 1094, a double-deck car was made the kind of car upon which legal rates of freight for sheep were made and based and if a double-deck was not furnished, then two ordinary or single-deck cars could be offered by the carrier with a charge for only one car. Defendant charged and plaintiff paid (under protest) for the two cars, $35, which, as just stated, was at the rate of 17 and 1-2 cents per 100 lbs. This charge was no more than defendant would have demanded for one double-deck car. And it is conceded that the charge made was within the rate of freight prescribed by statute, section 1194; but the point made by plaintiff is, that since defendant had a rate of 11 cents per 100 lbs. for cattle, it could not charge any higher rate for sheep, and that in doing so in this instance, it made itself liable to the penalty for which suit was brought.

The statute (section 1193) classified freight. There are seven special classes—from D to J, inclusive. Class D comprises all grain in carloads. Class E flour and

lime. Class F, salt, cement, water, lime and stucco. Class G, lumber, lath, and shingles in carloads. Class H, live stock in carloads. Class I, agricultural implements, furniture and wagons. Class J, coal, brick, sand, stone, railroad ties and cordwood in carloads. Section 1194 prescribes the maximum rates which a carrier is permitted to charge for the transportation of the freight thus classified. The amount of charge is not fixed for the different kinds of property in each class, but the maximum rate is named for the class as a whole. Thus, there is no rate fixed for the different kinds of live stock comprising Class H, but the maximum rate is named for the whole class, whether it be one kind of stock or another; and, as stated, the rate charged by defendant in this case was within the limit allowed, but was above the rate which defendant had made for transporting cattle. The question involves a construction of sections 1092, 1093, 1094 and also section 1129 of the statute. The sections read as follows:

Sec. 1092. "All railroad companies, private companies or individuals, owning or operating a railroad or railroads in the State of Missouri, are required to furnish a sufficient number of double-decked cars for the shipment of sheep to supply the demand for such cars on their respective lines, and to allow shippers to load both decks in said cars with sheep to the aggregate extent of (20,000) twenty thousand pounds, which cars, so loaded, shall be received and transported by such railroad companies, or private companies or individuals, as one carload of stock, and it shall not be lawful for said railroad companies, private companies or individuals, to charge or receive for the transportation of a double-decked car of sheep more than the legal rate of freight allowed for the shipment of stock."

Sec. 1093. "Should any railroad company, or private company or individuals, owning or operating a railroad or railroads in the State of Missouri, refuse or neglect to furnish cars as provided in the preceding section,

it shall not be lawful for them to charge or receive for the transportation of a car of sheep more than one-half the legal rate of freight  allowed for the  shipment of stock."

Sec. 1094.  "Any railroad company or private company or individuals owning or operating a railroad or railroads in the State of Missouri, failing or refusing to comply with the provisions of sections 1092 and 1093, shall pay to the shipper not less than fifty dollars ($50) nor more than two hundred dollars ($200) for every failure or refusal to comply with said sections, to be recovered in any court or competent jurisdiction:  Provided, that such railroad company, private company or individuals owning or operating a railroad in this State shall  have  the  privilege of furnishing, instead of a double-decked car, two cars, for which only one rate shall be charged."

Sec. 1129.  "If any such common carriers shall directly or indirectly, by any special rate, rebate, drawback or other device, charge, demand, collect or receive from any person or persons, firm or corporation a greater or less compensation for any service rendered in the transportation of any kind of property upon such railroad within this State than it charges, demands, collects or receives from any other person or persons, firm or corporation for doing for him or them a like service in the transportation of a like kind of property under substantially like circumstances and conditions, such common carrier shall be deemed  guilty of unjust discrimination, which is hereby prohibited and declared unlawful."

It seems to us to be clear that the statute permits the carrier to charge any rate he chooses for the transportation of freight  provided it is not  more than the statute prescribes.  And he is not bound to charge the same price or rate for each of the different kinds of property embraced in any one class.  So, although  horses,

mules, cattle, hogs, sheep and goats are different kinds
of live stock, all embraced in Class H, yet the carrier
may make any rate he pleases for any of these kinds, pro-
vided he does not exceed the maximum rate allowed by
law. He may charge as much less than that rate as he
wishes. In this case, the defendant has determined up-
on and fixed a rate of 11 cents per 100 lbs. for cattle by
the carload, and 17 and 1-2 cents per 100 lbs. for sheep
by the carload (one double-deck or two single-deck
cars). The rate for the sheep is within the charge al-
lowed by law, and the rate for cattle is less than the rate
allowed by law. There is no reason in saying that be-
cause he charges a less rate for cattle than allowed by
law he shall charge the same rate for sheep. The inevit-
able result of such holding would be that the carrier
would charge the highest rate allowed by law for all
property in a class when he might well afford to charge
less for several of the kinds embraced in that class if
he could do so without endangering his rate on other
kinds which he could not haul for less. The carrier
might well conclude that it was more trouble and risk
to carry sheep in a double-deck car (or two single-deck
cars counted as one) than to carry cattle; and so he
might conclude that there was more risk and trouble in
carrying mules than goats, and for these reasons fix dif-
ferent rates, all, of course, within the limit allowed by
law. But if he is made to understand that if he gives
the shipper a less rate for one kind he will be compelled
to give such less rate for all kinds, he will fix upon the
highest rate for all kinds, and thus the shipper will be
deprived of a benefit he otherwise would receive. We
will not suppose the legislature meant such harmful re-
sult to the shipper in whose interest the statute was en-
acted.

If the interpretation for which plaintiff contends
should prevail as to Class H, embracing live stock, then
it must likewise be applied to the various other kinds of
property embraced in the other classes. So that in Class

E, there must be the same rate made for lime that there is for flour. In Class F, the same rate for salt as for stucco. In Class J, the same rate for coal, or brick, or sand, as for stone, railroad ties or cordwood. We think such construction of the statute harmful and unreasonable, and we reject it.

In support of his position plaintiff relies upon section 1129 of the statute prohibiting discrimination, set out above. That section was never intended for a case like the one under consideration. The section is addressed to the carrier who discriminates as between shippers for doing the same service under the same conditions. It is a matter of common notoriety, of which we may take notice, that carriers frequently discriminated between shippers by rebates and different devices of favoritism to some, or of coercion or ill-will to others. The evil became a matter not only of State, but national concern and Legislatures, both State and Federal, enacted preventive measures. Discrimination means to make a difference between. That is, as applied to this case, to make a difference between shippers; and the motive for discrimination, as just suggested, is favor, or coercion or ill-will. There can be no discrimination when all are served alike when asking like service. Thus, as applied to this case, if for a carload of sheep one shipper was directly, or by any evasive device, charged less than another, it would be discriminating favoritism. But so long as all shippers of sheep are charged the same rate for sheep and all shippers of mules are charged the same rate for mules, and so through the list of live stock, there is no discrimination. So long as every one is treated and charged alike for the same kind of property and the charge does not exceed the rate allowed by law, the law is not violated.

Though there were perhaps others, yet there are two principal objects of the statute here construed: one to prevent the carrier from making exorbitant charges, by fixing a maximum rate, above which he could not go.

The other was to enforce equality between shippers to a competitive market and thus prevent the carrier from building up one shipper and pulling down his competitor. There is no competition (unless in the remotest degree) in the different kinds of live stock embraced in Class H. For instance, it can make no difference to a shipper of sheep or goats what rate the carrier may charge for mules, nor for horses or cattle. The market antagonist of a sheep buyer or seller is another sheep buyer or seller, not one who buys or sells mules, horses or cattle.

It is well to remark that we do not attach significance to the expression in section 1092, that there shall not be a greater charge for a double-deck car, "than the legal rate of freight allowed for shipment of *stock*." That expression simply means that as a *maximum* rate had been fixed for stock of all kinds, the charge for a double-deck car of sheep should not exceed that rate.

But counsel suggest that when the statute (section 1193) put all live stock in one class, it thereby, in a legislative way, declared all live stock to be "like" property, as meant by section 1129. There is no reason in the suggestion. In making classes of the different kinds of freight mentioned herein, the Legislature declared the maximum rate which would be allowed to be charged for any kind of property in that class, but there was no intention to say that the carrier might not charge a less rate for any of these kinds, provided all shippers were charged the same. Any other construction of the statute would be in the face of reason and would defeat the end and purpose of its enactment.

The expression "like kind of property," as used in the statute, means the same kind. It is true, that some times the word "like" will be interpreted to mean of the same nature or class, but its true meaning is more restricted than that. At any rate, its meaning will vary some with the connection and intent with which it is used. Thus, a "like pleading" means the same plead-

ing in name, as a petition or an answer. Munford v. Keet, 154 Mo. 48. Again, the "same offense" and the "like offense" are identical in meaning. Comonwealth v. Fontain, 127 Mass. 42. Again, a stipulation that goods shall be "delivered in like good condition," means, the same condition as that in which they were received. Kiff v. Railway, 32 Kansas 263. And so when the statute preventing discrimination makes use of the expression "like kind of property" it means that there shall be no difference in rate for the same kind of property.

The judgment should be reversed. All concur.