## CHICAGO TITLE & TRUST CO. v. SMIETANKA, Collector of Internal Revenue.

(District Court, N. D. Illinois, E. D.   March 14, 1921.)

Internal revenue ⬩7—Trust agreement held to create association subject to income tax.

An agreement between the stockholders of five street railway companies, by which the legal title to the stock was vested in trustees, who were to do certain things, but in all other matters to be under the control of a committee of so-called participating stockholders, *held* to create an "association," within the meaning of Income Tax Act Oct. 3, 1913,. § II G(a), providing that the normal tax shall be levied on the net income of "every corporation, joint-stock company or association, and every insurance company organized in the United States, no matter how created or organized, not including partnerships"; the clause "no matter how created or organized" applying to corporations, joint-stock companies, and associations, as well as to insurance companies.

[Ed. Note.—For other definitions, see Words and Phrases, First and. Second Series, Association.]

At Law. Action by the Chicago Title & Trust Company, as trustee of the Chicago City & Connecting Railways Collateral Trust, against one Smietanka, Collector of Internal Revenue. On demurrer to declaration. Demurrer sustained.

Busby, Weber, Miller & Donovan, of Chicago, Ill., for plaintiff.
Charles F. Clyne, U. S. Atty., of Chicago, Ill., for defendant.

PAGE, Circuit Judge. Persons owning capital stock of five street railways in Chicago, desiring to effect a unitary control of the properties, executed the agreement out of which grows the question here, viz.: Did that agreement create a joint-stock company or association, taxable under section II G (a) of the federal Revenue Act of 1913 (38 Stat. 172)? Such a tax was paid by the plaintiff under protest, and it brings this (and four similar suits) against the defendant, a former internal revenue collector, to recover the money paid on the ground that it was an illegal tax. The question arises upon a demurrer to the declaration.

It is strongly urged upon the court that this case presents a trust similar to what is known as the Massachusetts Trust, and that it comes within the purview of and is governed by Crocker v. Malley, 249 U. S. 223, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601. However, I find that it has features which show it to be quite different from the Crocker Case. The Supreme Court in that case said:

"The trust that has been described would not fall within any familiar conception of a joint-stock association."

And:

"If we assume that the words 'no matter how created or organized' apply to 'association,' and not only to 'insurance company,' still it would be a wide departure from normal usage to call the beneficiaries here a joint-stock association, when they are admitted not to be partners in any sense, and when they had no joint action or interest and no control over the fund. On

the other hand, the trustees by themselves can not be a joint-stock association within the meaning of the act unless all trustees with discretionary powers are such. * * * We perceive no ground for grouping the two—beneficiaries and trustees—together, in order to turn them into an association, by uniting their contrasted functions and powers, although they are in no proper sense associated."

In Eliot v. Freeman, 220 U. S., 186, 31 Sup. Ct. 361, 55 L. Ed. 424, the court said:

"The language of the act [of 1909], * * * 'now or hereafter organized under the laws of the United States,' etc., imports an organization deriving power from statutory enactment."

Section 38 of the act of 1909 reads:

"That every corporation, joint-stock company or association, organized for profit and having a capital stock represented by shares, and every insurance company, now or hereafter organized under the laws of the United States, or of any state or territory of the United States or under the acts of Congress applicable to Alaska," etc., "shall be subject to pay annually. * * *" 36 Stat. 112.

The act of 1913 reads:

"That the normal tax * * * shall be levied, assessed, and paid annually upon the entire net income arising or accruing * * * during the preceding calendar year to every corporation, joint-stock company or association, and every insurance company, organized in the United States, no matter how created or organized, not including partnerships."

It is contended that the words "no matter how organized" in the act of 1913 relate to insurance companies only, but the court is of the opinion that those words relate back to the words "every corporation, joint-stock company, or association," so that what is meant is that all such concerns (not including partnerships) are included and are taxable. Eliot v. Freeman, supra.

There are material differences between the so-called trust in this case and the trust in Crocker v. Malley. The trustees here, except for certain fixed things, are not principals at all, but are mere agents of the committee hereinafter referred to. The parties who conceived and drew up the agreement in question simply built up an organization by the use of language that reads in many respects much like the old corporation law of Illinois. They superimposed that organization upon the four or five corporations owning the street railway system of the city of Chicago, by placing the legal title to the capital stock of those corporations in the trustees named, who are to do certain specified things only, and by providing for a committee, which controls even the power of the trustees to vote the capital stock of the street railway companies. This committee is elected by what is called participating shareholders, who hold certificates of common and preferred participating shares issued by the trustees in lieu of the capital stocks of the corporations. The whole agreement is shot through with provisions for control by the committee, particularly upon page 25:

"And from time to time the trustees may give proxies to any person or persons to vote such stock; but in voting upon any of such stock the trustees shall follow the directions or instructions, if any, that may be given to the trustees by the committee."

And again, on page 30, where it undertakes to enumerate the powers of the trustees, they use this language:

"Subject to any rights of the trustees of the said collateral trust indenture dated January 3, 1910, as specified therein, and subject to the terms of the written approval or consent of the committee in any case where under the terms of this trust agreement such approval or consent is authorized or required, the trustees shall have such power," etc.

Again:

"To invest at any time * * * any sum or sums * * * which the committee may approve."

And again, in (i), to—

"vote upon any of the shares, constituting any part of the deposited securities, in favor of any lawful consolidation, merger, or reorganization of the properties, franchises, or shares of any of the companies * * * upon such terms and conditions as shall be approved by both the committee and the trustees."

In Crocker v. Malley the Supreme Court does not undertake to say whether there could be such a thing as an association not organized under some law; but I am of the opinion that there can be such an association and that the organization here shown is within the statute.

It is claimed by counsel that, if any organization ever becomes an association, it thereby necessarily becomes a partnership; but there are, in my opinion, certain limitations and conditions that prevent the agreement here from creating an ordinary partnership.

The demurrer is sustained.