# APPEAL OF PHILADELPHIA & READING RELIEF ASSOCIATION.

### Docket No. 5620. Decided August 3, 1926.

1. A voluntary unincorporated association, composed of employees of a railroad company, or its successors, and of its or their affiliated, controlled, and leased lines, organized for the purpose of establishing and managing a relief fund for the payment of benefits to its members, in case of sickness, accident, or death, whose business is conducted by executive officers under the supervision of an advisory committee, a majority of which is elected by the members of the association, and otherwise doing business under the general form and mode of procedure of a corporation, is an "association," within the meaning of section 1 of the Revenue Act of 1918.

2. An association, not organized for fraternal purposes, having neither lodges, ritual, ceremonial, or regalia, owing no allegiance to any other authority or jurisdiction, and whose members are engaged in numerous and diverse vocations, though employees of a common employer, is not a fraternal beneficiary association operating under the lodge system, and, therefore, is not exempt from taxation under the provisions of subdivision (3) of section 231 of the Revenue Act of 1918.

3. Where the income of such an association is made up, in the main, of definite monthly contributions made by its members, in consideration for the benefits to be paid to them in the case of sickness, accident, or death, the association is not a corporation "organized and operated exclusively for religious, charitable, scientific, or educational purposes, or for the prevention of cruelty to children or animals," and, therefore, is not exempt from taxation under the provisions of subdivision (6) of section 231 of the Revenue Act of 1918.

4. The business of such an association has the same general characteristics as that of a mutual life insurance company, and is analogous to a mutual life insurance business; hence, it can not qualify as a "like organization" such as those enumerated in subdivision (10) of section 231 of the Revenue Act of 1918, and is not exempt from taxation under the provisions of that subdivision.

5. A voluntary unincorporated association, doing business under the general form and mode of procedure of a corporation, though having no capital stock, is subject to the profits taxes imposed upon corporations by section 301 of the Revenue Act of 1918, unless otherwise exempt under the provisions of section 304 of that Act; and, for the purposes of computing the profits taxes, its invested capital may be entirely computed under the provisions of subdivision (3) of section 326(a) of the Revenue Act of 1918.

6. The contributions made by the railroad company and its affiliated, controlled, and leased lines, to the relief fund of the association, are not donations, nor "property acquired by gift" in the hands of the association within the purview of section 213(b)(3) of the Revenue Act of 1918; hence, they must be in-

cluded in the gross income of the association, subject to the income and profits taxes.

7. Since the contributions of its members are made upon the monthly basis, and not on the weekly payment plan, and the life and accident benefits are available to members only so long as they continue in the active service of the railroad company, or one of its affiliated, controlled, and leased lines, the association is not a corporation " issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan continuing for life and not subject to cancellation," within the purview of subdivision (11) of section 234(a) of the Revenue Act of 1918, and, therefore, is not entitled to deduct from gross income, under the provisions of that section, any portion of the net additions made within the taxable year to reserve funds for the protection of its members.

*William I. Woodcock, Jr., Esq.,* for the petitioner.
*A. H. Fast, Esq.,* for the Commissioner.

Before STERNHAGEN and ARUNDELL.

This is an appeal from the determination by the Commissioner of deficiencies in income and profits taxes for the years 1919 and 1920, in the respective amounts of $16,494.72 and $3,389.80, a total of $19,884.52, the entire amount of which is in controversy.

The issues raised are:

1. Whether the petitioner is an " association " within the meaning of section 1 of the Revenue Act of 1918, and, therefore, subject to the income and profits taxes imposed upon corporations.

2. Whether the petitioner is exempt, under the provisions of subdivisions (3), (6), or (10) of section 231 of the Revenue Act of 1918 and subdivision (a) of section 304 of that Act, from income and profits taxes.

3. If the petitioner is not exempt from income and profits taxes under the provisions of the statute referred to in issue (1), is the nature of its organization and the business carried on by it such as to bring it within the definition of the term " corporation," as that term is defined in section 1 of the Revenue Act of 1918, thereby making it subject to the profits taxes imposed by section 301 of that Act?

4. Whether the amounts contributed to the petitioner by the Philadelphia & Reading Railway and the United States Railroad Administration during the taxable years in question represent property " acquired by gift," within the purview of section 213(b)(3) and section 233(a) of the Revenue Act of 1918, and, therefore, are to be excluded in computing petitioner's gross income.

5. Whether, in computing its taxable net income, petitioner is entitled, under the provisions of section 234(a)(11) of the Revenue

Act of 1918, to a deduction representing reasonable net additions (not required by law) to its reserve fund for the protection of its members.

## FINDINGS OF FACT.

Petitioner, a voluntary unincorporated association, with its principal office at Philadelphia, was originally organized in 1888. Its membership, aim, object, and purpose was stated in the governing regulations to be as follows:

The " Philadelphia and Reading Relief Association " is an association composed of employees of the Philadelphia and Reading Railroad Company, or its successors, and of its or their affiliated, controlled and leased lines, which Companies and the Companies operating said lines are hereinafter designated as the "Associated Companies," in the executive charge of a Superintendent, whose directions in carrying out its regulations are to be complied with, subject to the control of an "Advisory Committee."

\*        \*        \*        \*        \*        \*        \*

The object of this Association is the establishment and management of a fund to be known as the " Relief Fund," for the payment of definite amounts to members of the Association, when, under the regulations thereof, they shall be entitled thereto, by reason of disablement from accident, sickness or other cause, and, in the event of their death, to their relatives, or other beneficiaries specified in their applications for membership or thereafter designated in accordance with the said regulations.

During the years 1919 and 1920 the membership of the association was composed of such employees of the Philadelphia & Reading Railway Co., successor to the Philadelphia and Reading Railroad Co., and its affiliated companies and/or of the United States Railroad Administration operating the lines of the Philadelphia & Reading Railway Co., who, through their voluntary applications and compliance with the governing regulations, became entitled to all the privileges and benefits of membership, and such other persons who had been continuously in the service of one or more of the Associated Companies for a period of three years immediately preceding the termination of their employment by said companies, and who, at the time of termination of their employment, had been members of the Association for a period of three years. Membership in the Association of former employees was limited to the privilege and for the purpose of contributing, according to the regulations, to the minimum death benefit, contributed for by them for the last year of their employment, or to any smaller amount.

Membership in the Association and participation in the benefits of the relief fund thereof are based upon an application by the proposed member, in the form prescribed by the regulations, approved by the superintendent of the Association, and upon certificate of membership issued by him to the applicant. The prescribed

form of application contains (1) an agreement upon the part of the applicant to be bound by the regulations of the Association; (2) an agreement that the company by whom he is employed shall apply as a voluntary contribution from any wages earned by him under such employment, or from benefits that may thereafter become payable to him, a certain amount per month according to the rate prescribed by the regulations for persons of the same class; (3) the designation by the applicant of the beneficiary or beneficiaries to whom the death benefit is payable; (4) the disposition to be made of the death benefit in the event that the person or persons designated as the beneficiary or beneficiaries shall not be living or shall be incapacitated for executing the requisite receipt at the time of the applicant's death; (5) an agreement that the application, when approved, shall not be avoided by any change in the character of the applicant's service, or locality where rendered; that any change in the amounts to be contributed to the relief fund, which the applicant may therafter consent to, shall be appropriated from his wages; and that the agreement covering the appropriations from his wages of his monthly contributions to the relief fund shall constitute an assignment in advance to his employers, in trust, for the purposes of the Association, which assignment shall have precedence over any other assignment by the applicant of his wages, or of any claim upon his wages on account of liabilities incurred by him; (6) an agreement by the applicant, for himself and those claiming through him, to be bound by the regulations providing for final and conclusive settlement of disputes by reference to the superintendent of the Association, and an appeal from his decision to the Advisory Committee; (7) the applicant's certificate that he is correct and temperate in his habits; that he is unaware of the existence of any injury or disease, constitutional or otherwise, which will tend to shorten his life; and that he is in good health and able to earn a livelihood; and (8) an agreement by the applicant that any untrue or fraudulent statement made by him to the medical examiner, or any concealment of the facts in the application, or his resignation from the service of his employer, or his relief from employment and pay at the pleasure of his employer, shall, except as otherwise provided in the regulations, forfeit his membership in the Association, and all bnefits, rights and equities arising therefrom, except that his leaving the service shall not, in the absence of any other causes of forfeiture, deprive him of any benefits to payment of which he shall have previously become entitled by reason of accident or sickness occurring while in the service, nor of the right to continue his membership in respect of death benefit only, as provided in the regulations. In the case of members terminating their service with any of the associated companies, who desire to continue their member-

ship in respect of the death benefit after termination of service, a supplementary application was executed, which merely provided for the continuance of his membership in the Association, but only with the privilege and for the purpose of contributing, according to the regulations, to the minimum death benefit contributed for by him for the entire last year of his employment, or to any smaller amount, and an agreement on the part of the applicant to pay monthly in advance, in cash, to the superintendent of the Association, such sums as may be required therefor by the regulations. The certificate of membership is in terms as follows:

Philadelphia and Reading Relief Association

Certificate of Membership

No. ——

Office of the Superintendent
Philadelphia, Pa.

THIS CERTIFIES, That ——————— employed by the ——— ——————— is a member of the Philadelphia and Reading Relief Association, and is entitled to the benefits provided by the Regulations of the said Association (which Regulations are hereto annexed, and which, together with any other Regulations of the said Association that may hereafter be adopted as therein provided, are hereby made a part of this Certificate) for a member of the —— class.

Div. Dept., etc. ——————— ———————————

Sup't of the Philadelphia and
Reading Relief Association.

Members are classified according to the amount of their regular pay per month, as follows:

First Class.—Those receiving not more than $35 per month.

Second Class.—Those receiving more than $35 per month and not more than $55 per month.

Third Class.—Those receiving more than $55 per month and not more than $75 per month.

Fourth Class.—Those receiving more than $75 per month and not more than $95 per month.

Fifth Class.—Those receiving more than $95 per month.

Any member may, at any time, without medical examination, change to a class lower than that determined by his pay. Any member, not over 50 years of age, whose pay is advanced, may, upon passing a satisfactory medical examination, enter a class higher than that in which he has been contributing, provided the class which he enters is not higher than that determined by his advanced pay.

A person's membership in the Association ceases and determines as soon as he voluntarily leaves the service of that one or more of the Associated Companies by which he is employed or is furloughed, suspended, relieved, or discharged therefrom. Membership, how-

ever, may be retained during absence from service by reason of furlough or suspension for a period not longer than nine months, provided the member shall return to service or duty at or before the expiration of such period, or upon recovery from disability then existing, which shall have commenced during time contributed for in advance. Also, membership may be retained upon voluntary termination of service, under conditions already outlined.

During the two years under consideration, the total number of employees of the Associated Companies and/or of the United States Railroad Administration operating the lines of the Associated Companies, was approximately 33,000. During the same years the membership in the Association fluctuated between 23,000 and 25,000, of which approximately 1,000 were former employees of the Associated Companies who had voluntarily terminated their services and who had retained their membership in the Association for the purposes of the death benefit only.

The relief fund from which the benefits are paid is formed by contributions from employees of the several associated companies who are members of the Association; appropriations, when necessary, to make up deficits for benefits to their own employees respectively, by the respective companies; income or profit derived from investments of the moneys of the relief fund; and such other contributions, gifts, or legacies as may be made to the Association for the use of said fund.

Contributions are made by the members monthly in advance, at the following rates:

> First Class—$0.75 per month.
> Second Class—$1.50 per month.
> Third Class—$2.25 per month.
> Fourth Class—$3.00 per month.
> Fifth Class—$3.75 per month.

After a member has contributed in one or more of the foregoing classes for a total period of 21 consecutive years, the amount of his monthly contribution, in any class for which he may thereafter contribute, is two-thirds of the monthly contribution for such class, but the reduction applies only to members who continue in the service of one or more of the Associated Companies and is not applicable to contributions for additional death benefits.

The rate per month of contributions for death benefit only, additional to the death benefit of a member's class, is determined by the age of the member at the time of taking the additional death benefits, as follows:

For each additional death benefit of the first class, for a member not over 45 years of age, 30 cents; over 45 and not over 60 years of age, 45 cents; and over 60 years of age, 60 cents. Contributions for additional death benefits of the second, third, fourth, and fifth

classes, are determined by multiplying the rates prescribed for additional death benefits of the first class by 2, 3, 4, and 5, respectively.

Under date of November 18, 1896, the board of directors of the Philadelphia & Reading Railway Co. adopted the following resolution:

WHEREAS, The Philadelphia and Reading Relief Association is composed of employees late of the Philadelphia and Reading Railroad Company, who will until further notice be continued in the service of the Philadelphia and Reading Railway Company,

AND WHEREAS, the operation of the said association has been to the mutual advantage of the Company and of the said employees, and therefore the association as now constituted should, in the opinion of this Board, be continued:

Now THEREFORE, RESOLVED, that the Philadelphia and Reading Railway Company will assume all expenses of clerk hire, office room and all charges for stationery, etc., required in the conduct and management of the Philadelphia and Reading Relief Association, leaving the fund liable only to legitimate demands to be made upon it and will facilitate in every way, without charge therefor, the investment and handling of the fund from time to time, for the benefit of the Relief Association, and will contribute to said fund to the amount of five per cent, of all sums paid by the employees, such contributions to be made by the Philadelphia and Reading Railway Company from time to time in accordance with the regulations of said Relief Association.

RESOLVED, That the President be authorized to make such payments from time to time as may be necessary to carry into effect the foregoing resolution.

Provisions similar to those contained in the above-quoted resolution, except that they applied to the Philadelphia & Reading Railroad Co., had been incorporated in the governing regulations of the Association from time of its organization in 1888. The amounts contributed, under the provisions of that resolution and the regulations, by the United States Railroad Administration in 1919, and the Philadelphia & Reading Railway Co. and/or the United States Railroad Administration in 1920, were $14,575.30 and $15,324.52, respectively.

Members are entitled, upon the conditions prescribed in the governing regulations, to the following benefits:

First.—Payments while disabled by accident in the service of any one of the Associated Companies for each day during a period of not longer than 52 weeks, at the rate of $0.50 per day for a member of the first class, and of greater amounts for members of the other classes, in proportion to their contributions. After the expiration of the period of 52 weeks, for disability due to accident while in the service of any one of the Associated Companies, one-half of the rate to which any member shall have been entitled during such period, so long as such disability shall continue, or until he shall be offered some employment in the service suitable to his capacity at the time of employment.

Second.—Payments while disabled by sickness or by injury other than accident in such service, for each day after the first 7 days of such disability, and for a period not longer than 52 weeks, at the

rate of $0.40 per day for a member of the first class and of greater amounts for the other classes, in proportion to their contributions; provided, that if the disablement for sickness continues for a period of at least three weeks, the benefits date from and include the first day of disablement.

Third.—A payment, on death of a member from accident or other causes, occurring during time for which he has contributed, or while receiving disablement benefits, or during a month in which he has recovered from disability, of $250 for a member of the first class, and of greater amounts for the other classes, in proportion to their contributions.

The regulations of the Association provide that the superintendent thereof shall be appointed by the first vice president of the Philadelphia & Reading Railroad Co., or by such other officer as may from time to time be designated by the Railroad Company, or its successors. The superintendent has general charge of all the business pertaining to the Association; certifies to the correctness of all bills and sends them for approval to the chairman of the Advisory Committee; and employs, with the approval of the chairman of the Advisory Committee, such employees as may be necessary for the proper conduct of the business of the Association. All questions of whatever character, arising in any manner, or between any parties in connection with the Association, or the operation thereof, are submitted to the determination of the superintendent of the Association, whose decision is final and conclusive thereon, subject to the right of appeal to the Advisory Committee.

The Advisory Committee, which under the regulations has general supervision of the operations of the Association, is composed of the first vice president of the Philadelphia & Reading Railway Co., or such other officer as the Railway Company may designate, as an ex-officio member and chairman, and eighteen other members, eight of whom are appointed by the board of directors of the Railway Company, and ten elected by the contributing members. In order to elect the members of the Advisory Committee who represent the contributing members, the territory served by the Associated Companies is divided into ten groups and the members employed in each of said groups elect one of their number to act as their representative on the said committee.

The moneys received for the relief fund are held by the treasurer of the Philadelphia & Reading Railway Co., and are deposited as a separate fund to the credit of the Association, subject to drafts by such treasurer, only when the same are countersigned by the chairman of the Advisory Committee.

The Advisory Committee directs the investment, and any changes therein, of moneys of the relief fund which are not required to be

kept on hand for current use. If, at the end of any fiscal year, there is a surplus, after making due allowance for liabilities incurred and not paid, such surplus may be used in the promotion of a fund for the benefit of superannuated members of the Association, or in such other manner for the sole benefit of the members of the Association, whether by additional benefit or otherwise, as may be determined by the vote of two-thirds of the Advisory Committee. On at least three occasions, sufficient amounts have been appropriated out of the surplus toward increasing the benefits or reducing the contributions of members.

The total amounts of death benefits carried in the Association by its members, at the close of the years 1919 and 1920, was $10,554,750 and $10,751,250, respectively.

Petitioner was not, during the years 1919 and 1920, under the supervision of the Insurance Department of the State of Pennsylvania, and was not required by law to maintain any reserves for the protection of its members. The experience of the Association is that the entire surplus remaining at the end of the years under consideration was necessary as a reserve fund to enable it to meet its obligations to its members in future years.

During the years 1916, 1917, and 1918, the Association's operations resulted in deficits of $22,743.64, $17,272.89, and $83,828.49, respectively, all of which were met by payments out of the so-called reserve (surplus) of the Association. The entire surplus was carried in the surplus account, no reserves, specifically as such, being carried on the books of account.

Petitioner filed returns under protest for the years 1919 and 1920, showing no taxable income and no tax due, to which it attached the following statement:

This return is filed under protest, for the reason that the Association is a voluntary and mutual one, composed of employees of the Philadelphia and Reading Railway Company and its affiliated companies, is exclusively operated for " charitable " purposes, even though beneficiaries make a contribution to the fund established for these purposes, and no part of its earnings " accrues to the benefit of any private stockholder or individual," any more than do those of an " association for the relief of the families of clergymen," to the funds for which relief clergymen themselves contribute, and which latter kind of association is included by the Treasury Department in " charitable corporations," exempt from taxation under the Income Tax Acts.

The income of this Association, derived largely from definite contributions made by the members thereof, is substantially enhanced by stipulated contributions from the several railway companies whose employees are members thereof, and every several company has given its covenant under seal to the Association that it will make good any deficit in funds required to meet the stipulated obligations of the Association to its members. A large part of the expenses of conducting the operations of the Association is paid directly by the several Railway Companies.

50144°—27——49

The income of the Association, with the accretions from the investment of its reserves, is used solely in the payment of sick, accident and death benefits to its members, and some of the necessary expenses of its operation. That a surplus is shown in the current year is merely a matter of good fortune and excellent management, since for several years past the income of the Association, plus the voluntary contributions made by the several railway companies, was insufficient to meet its obligations. The balance of receipts over expense is in no sense a surplus out of which dividends may be paid, or any distribution whatever be made, but represents the results of the operations of a fortunate year that may be entirely dissipated by the conditions that have prevailed for four years previous, in which deficits were shown in the operations of the Association. It is evident that to tax this fund is to appropriate funds that are held in trust to meet the demands of sickness, accident and death, which the results of past experience have proven to be entirely inadequate.

The Commissioner has held that the petitioner is not exempt from income and profits taxes under the provisions of section 231 and 304 of the Revenue Act of 1918; that its net income, in excess of the credits provided for by sections 311 and 312 of the Revenue Act of 1918, is subject to the profits taxes imposed by section 301 of that Act; that the amounts contributed to the relief fund, during the years 1919 and 1920, by the Philadelphia & Reading Railway Co. and/or the United States Railroad Administration, should be included in the gross income for the purpose of computing petitioner's taxable net income; and that petitioner is not entitled, under the provisions of section 234(a)(11) of the Revenue Act of 1918, to a deduction representing reasonable net additions to its reserve funds for the protection of its members.

OPINION.

ARUNDELL: At the outset we are confronted with the contention that petitioner is not an association, within the meaning of that term as used in section 1 of the Revenue Act of 1918, and, therefore, is not subject to the income and profits taxes imposed upon corporations. The part of the statute pertinent to this proposition reads as follows:

Section 1. That when used in this Act—
*        *        *        *        *        *        *
The term " corporation " includes associations, joint-stock companies, and insurance companies;  * * *

The word " association " appears to be used in the Act in its ordinary meaning. " In the United States this term is used to signify a body of persons united without a charter but upon the methods and forms used by incorporated bodies for the prosecution of some enterprise." 1 Bouvier's Law Dict. (Rawle's 3d Rev.) 269. Other definitions are: " In the United States, as distinguished from a corporation, a body of persons organized, for the prosecution of some purpose, without a charter, but having the general form and mode of procedure of a corporation." Webster's New Int. Dict. " The

term 'association' usually means an unincorporated organization composed of a body of men, partaking in its general form and mode of procedure of the characteristics of a corporation." 1 Words & Phrases 584, (from *Pratt* v. *Roman Catholic Orphan Asylum*, 46 N. Y. S. 1035; 20 App. Div. 352). See *Malley* v. *Bowditch*, 259 Fed. 809; *Chicago Title & Trust Co.* v. *Smietanka*, 275 Fed. 60; also *United Mine Workers* v. *Coronado Co.*, 259 U. S. 344, in which unincorporated labor unions were held to be associations within the meaning of the Anti-Trust Law.

We have no doubt that petitioner is an "association" within the meaning of the Revenue Act, and, unless otherwise exempt from taxation, is subject to the income and profits taxes imposed upon corporations. Its affairs are managed by executive officers, whose duties are comparable to those with which corporate officers are usually charged; its Advisory Committee exercises executive supervision over its entire affairs, as does a board of directors of a corporation, and it generally conducts its business in corporation form.

The second proposition urged by petitioner is that it is exempt from income and profits taxes, under the provisions of section 231(3), (6), and (10), and section 304 of the Revenue Act of 1918. The statute in its parts pertinent to this situation reads as follows:

Sec. 230. (a) That, in lieu of the taxes imposed by section 10 of the Revenue Act of 1916, as amended by the Revenue Act of 1917, and by section 4 of the Revenue Act of 1917, there shall be levied, collected, and paid for each taxable year upon the net income of every corporation a tax at the following rates: * * *

Section 1. That when used in this Act—

* * * * * * *

The term "corporation" includes associations, joint-stock companies, and insurance companies; * * *

Sec. 231. That the following organizations shall be exempt from taxation under this title [Title II]—

* * * * * * *

(3) Fraternal beneficiary societies, orders, or associations, (a) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and (b) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents;

* * * * * * *

(6) Corporations organized and operated exclusively for religious, charitable, scientific, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual;

* * * * * * *

(10) Farmers' or other mutual hail, cyclone, or fire insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations of a purely local character, the income of which consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting expenses; * * *

Sec. 304. (a) That the corporations enumerated in section 231 shall, to the extent that they are exempt from income tax under Title II, be exempt from taxation under this title.

If the petitioner is exempt from income taxes under the provisions of either of the three subdivisions of section 231 quoted above, then, under the provisions of section 304, it is also exempt from the profits taxes. It is for us then to determine whether the character of petitioner's organization and the nature of the business carried on by it is such that it qualifies either as a fraternal beneficiary association, operating under the lodge system, and providing for the payment to its members of the benefits enumerated in subdivision (3) of section 231, or an association organized and operated exclusively for charitable purposes, or a purely local organization like those enumerated in subdivision (10) of section 231.

Under the provisions of section 38 (First) of the Corporation Tax Act of August 5, 1909, fraternal beneficiary associations, operating under the lodge system, and providing for the payment of benefits to members, were exempt from the excise tax. A similar provision was adopted in the Act of October 3, 1913, and the exempting language found in Section II, G. (a) [2] of that Act was carried forward into all of the later Revenue Acts. Sec. 11 (a) Third, of Revenue Act of 1916; section 11(a) Third of the Revenue Act of 1917; and sections 231(3) of the Revenue Acts of 1918, 1921, 1924, and 1926. Long prior to the passage of the Corporation Tax Act of August 5, 1909, several of the States had written into their statutes a definition of what constitutes a fraternal beneficiary association. We have noticed Conn. Pub. Acts 1895, p. 595; Ky. Stats., section 641; Mich. Pub. Acts 1893, No. 119; Mo. Rev. Stats., 1889, ch. 42, art. 10; New Hampshire Pub. Stats., 1901, p. 578; Ohio Gen. Code, section 9462; Okla. Rev. Stats., 1903, section 3236; and the Act of April 29, 1874, Penna. Laws 1874, p. 73. Undoubtedly, other States to which our investigation has not extended have similar provisions. The term "fraternal beneficiary associations" had been defined, judicially and by statute, long before 1909. *Berry* v. *Knights Templars' & Masons' Life Indemnity Co.*, 46 Fed. 439; *Knights Templar & Masons' Life Indemnity Co.* v. *Berry* (C. C. A., Eighth Circuit), 50 Fed. 511; *National Union* v. *Marlow*, 74 Fed. 775; and *Corley* v. *Travelers' Protective Association*, 105 Fed. 854. The Board will assume then that Congress used the term according to its legal significance at the time the several taxing statutes were passed.

That the petitioner qualifies as a beneficiary association under the Act of the Pennsylvania Legislature, passed April 29, 1874, is apparent beyond all doubt. Its whole purpose and design is to accumulate a fund from the contributions of its members and such other contributions, gifts or legacies as may be made for the use of said fund,

for beneficial or protective purposes, to be used in the aid or relief of members in case of sickness, injury, or death. It has no capital stock; and it yields no profit to any private stockholder or individual. But the exemption granted by the provisions of section 231(3) of the Revenue Act of 1918 does not extend to an association of this type unless it is a fraternal organization, operating under the lodge system. The absence of profit in the operation of the association, a point upon which petitioner so strongly relies, is not the criterion, but the want of a fraternal side and object which it is in some measure organized to promote. *Commercial Travelers' Life & Accident Association* v. *Rodway*, 235 Fed. 370.

Perhaps the leading judicial pronouncement as to what constitutes a " fraternal beneficiary association " is found in the case of *National Union* v. *Marlow*, 74 Fed. 775, where Judge Thayer, in speaking for the United States Circuit Court of Appeals, Eighth Circuit, and in disposing of the question as to whether the plaintiff was a fraternal beneficiary association and, therefore, exempt from the Missouri insurance laws, stated as follows:

We must accordingly assume that the words "fraternal-beneficial" were used in their ordinary sense—to designate an association or society that is engaged in some work that is of a fraternal and beneficial character. According to this view, a fraternal-beneficial society, within the purview of the. Missouri statute, would be one whose members have adopted. the same, or a very similar, calling, avocation, or profession, or who are working in unison to accomplish some worthy object, and who for that reason have banded themselves together as an association or society to aid and assist one another, and to promote the common cause. The term "fraternal" can properly be applied to such an association, for the reason that the pursuit of a common object, calling, or profession usually has a tendency to create a brotherly feeling among those who are thus engaged. It is a well-known fact that there are at the present time many voluntary or incorporated societies which are made up exclusively of persons who are engaged in the same avocation. As a general rule such associations have been formed for the purpose of promoting the social, moral, and intellectual welfare of the members of such associations, and their families, as well as for advancing their interests in other ways and in other respects. The Brotherhood of Locomotive Engineers may be instanced as one of the class of societies or associations to which we have referred, and many others of a like character might be mentioned. Many of these associations make a practice of assisting their sick and disabled members, and of extending substantial aid to the families of deceased members. Their work is at the same time of a beneficial and fraternal character, because they aim to improve the condition of a class of persons who are engaged in a common pursuit, and to unite them by a stronger bond of sympathy and interest. Such associations may well be described, in the language of the statute, as "organizations formed for * * * fraternal-beneficial * * * purposes." We think, therefore, that the legislature had this class of organizations in mind when it provided for the incorporation of fraternal-beneficial associations, * * *. It declared, in effect, or intended to so declare, that when a certain number of persons, among whom some natural bond of sympathy or interest existed, should form an association for self-improvement, or

for the purpose of aiding one another and strengthening the bond of union, such association might be consolidated into a corporation, and incidentally, to further the ends of its creation, might provide for the relief of members and their families, in case of sickness or death, * * *.

This statement, in part, was quoted with approval in the case of *Commercial Travelers' Life & Accident Association* v. *Rodway, supra*, by the United States District Court, Northern District of Ohio, which was a case involving the application of the provisions of section 38 (First) of the Corporation Tax Act of August 5, 1909, granting exemption to fraternal beneficiary associations.

In dealing with cases coming under section 231 of the Revenue Act of 1918, the character of the organization must be judged by its articles of incorporation, constitution, and by-laws, or by what other instrument it is governed. *Corley* v. *Travelers' Protective Association, supra; Berry* v. *Knights Templars' & Masons' Life Indemnity Co., supra.* Search the petitioner's governing regulations as we may, (it is the only instrument which has been offered to us), we are unable to discover, even in a remote degree, a single fraternalistic feature in its organization. It is entirely without any social features. Its membership is made up of individuals whose vocations are as numerous and diverse as the classifications of employment of a great railway system; the section hand, the freight hustler, the brakeman, the conductor in charge of a fast trans-continental train, the locomotive engineer, the train dispatcher, the clerk in the office, all are entitled to membership in the Association for the mere asking, expressed in written application, provided no disability exists; and yet none of these look to the petitioner for any betterment in social and laboring conditions. There is no fraternal object which moves them to seek membership in the Association, but rather the motive is mercenary. The petitioner has neither lodges, rituals, ceremonial, or regalia; and it owes no allegiance to any other authority or jurisdiction. It is not a " fraternal beneficiary association " operating under the lodge system, within the meaning of section 231(3) of the Revenue Act of 1918, and, therefore, is not entitled to exemption under the provisions of that section.

Is the petitioner a corporation or association organized and operated exclusively for charitable purposes, within the purview of section 231(6) of the Revenue Act of 1918? A society whose principal income is derived from a fixed regular compulsory contribution from its members, which is to constitute a fund to be used exclusively for the benefit of its members, is not a charitable society. *Young Men's Protestant Temperance & Benevolent Society* v. *Fall River*, 36 N. E. 57. " There is a species of organization, sometimes called a ' private charity,' which is not a public or general charity, * * * and that is an association for the mutual benefit of the

contributors and of no other persons. But such a case wants the essential element of indefiniteness in the immediate. objects, if not· that of gratuity in the contribution." *Saltonstall* v. *Sanders*, 11 Allen (Mass.) 446. Similar societies have been regarded in the law, not as charitable institutions, but as in the nature of· mutual insurance societies or mutual benefit societies. *Dolan* v. *Court Good Samaritan*, 128 Mass. 437; *Coe* v. *Washington Mills*, 21 N. E. 966; *Young Men's Protestant Temperance & Benevolent Society* v. *Fall River*, *supra*. Charity, in its legal sense, has its origin in gift and bounty. In the Girard Will case, the leading counsel for the will thus defined charity: "Whatever is given for the love of God, or the love of your neighbor, in the catholic and universal sense,— given from these motives and to these ends, free from the stain or taint of every consideration that is personal, private or selfish." *Ould* v. *Washington Hospital*, 95 U. S. 303, 311. "'It is the source whence the funds are derived, and not the purpose to which they are dedicated, which constitutes the use charitable.' \* \* \* Where a fund is wholly derived from rates and assessments, being in no respect derived from bounty or charity, it is not charitable." *St. Clement* v. *L'Institut Jacques Cartier*, 95 Me. 493; 50 Atl. 376; *Saltonstall* v. *Sanders*, *supra; Coe* v. *Washington Mills*, *supra*. In *Babb* v. *Reed*, 5 Rawle (Pa.) 151, it was held that a voluntary association of individuals, formed for the purpose of employing certain funds for the mutual benefit of the members and their families, can not be deemed to be an association for charitable purposes under the law of Pennsylvania. In *Swift's Executors* v. *Beneficial Society*, 73 Pa. St. 362, the court stated in part as follows:

The plaintiffs in this case are a beneficial society, both in name and by the provisions of their charter, and their benevolence and benefits are exclusively confined to contributing members of the association. The members must be regularly admitted, must not be infirm, must be citizens and between the ages of twenty-one and forty-five years of age; and no person shall be entitled to any benefits from this society until he shall have been one year a member. Each person, on being admitted a member of their society, shall pay such entrance-money and monthly dues and contributions as the society may by their by-laws from time to time declare. A member is not in full standing if in arrears for fines, contributions or monthly dues; and not entitled to benefits in sickness if in arrears for dues, contributions, or fines, for three successive stated meetings, and may be expelled for arrears of dues or fines. The amount to be paid in case of death of a member or his wife is fixed. There are other provisions showing that the benevolence is strictly a matter of contract, and may be enforced in a court of justice. The object of this society shall be the relief of its respective members when sick, or disabled by bodily infirmities to pursue their ordinary avocations. Its benevolence begins and ends at home. In *Babb* v. *Reed*, 5 Rawle 155, it was held that an association for the purposes of mutual benevolence among its members only, is not an association for charitable uses.

Here, for definite contributions, paid by its members at regular recurring periods, the Association undertakes to pay its members certain definite sums in the event of sickness, accident, or death. Whatever it may be called, the scheme is that of insurance. The relation of the Association to its members is contractual, rather than charitable. Nor is it a benevolent institution. No aid is furnished from generosity or liberality. None such is pretended. On the contrary, for a pecuniary consideration the Association agrees to pay a definite sum in the cases specified. If it fails to perform its contracts with its members, they may be enforced in the courts by suit. Certainly, under circumstances such as we have present in this case, it can not be successfully maintained that petitioner is a corporation or association, organized and operated exclusively for charitable purposes, and, hence, it is not entitled to exemption from tax under the provisions of section 231(6) of the Revenue Act of 1918.

It is also evident that petitioner does not come within the "like organizations of a purely local character, the income of which consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting expenses," as set out in subdivision (10) of section 231 of the Revenue Act of 1918. It is significant that, in the enumeration, in subdivision (10) of section 231, of the mutual insurance companies to be exempted from the tax, Congress did not include life insurance companies along with "farmers' or other mutual hail, cyclone, or fire insurance companies." That Congress did not intend to include mutual life insurance companies, or all organizations organized and conducted on a mutual basis, within the term "like organizations" is evident from other provisions of the statute. While the meaning of the term "like" varies with the connection and the intent with which it is used, *Etna Life Insurance Co.* v. *Coulter*, 74 S. W. 1050, 1052; *Wynn* v. *Wabash R. R. Co.*, 86 S. W. 562, 564; it has been judicially defined to mean analogous, *In re Rugheimer*, 36 Fed. 369, 373; exactly corresponding, Webster's Int. Dict.; having the same, or nearly the same, appearance, qualities, or characteristics, *Haverstraw* v. *Eckerson*, 108 N. Y. S. 506, 507; resembling, *Lincoln Center* v. *Linker*, 53 Pac. 787, 788; *Munford* v. *Keet*, 55 S. W. 271; similar to, *Lincoln Center* v. *Linker*, *supra;* and *Haverstraw* v. *Eckerson*, *supra*. As we have previously pointed out, whatever the petitioner's business may be called, the scheme is that of insurance. The relation of the petitioner to its members is contractual. For definite contributions the petitioner has contracted to pay specified benefits in the event of sickness, accident, or death. Its business has the same characteristics as that of a mutual life insurance company, and is analogous to a mutual life insurance business. Life and health insurance is too well known and important to suppose that Congress would detail hail, cyclone,

and fire insurance, and intend life and health insurance to be included in the general expression of " like organizations." *Bankers' & Planters' Mutual Insurance Association* v. *Walker*, 279 Fed. 53.

There is no doubt in our minds that petitioner is liable for tax under the Revenue Act of 1918, and we so decide.

The next proposition raised by the petitioner is that it is not liable for the profits taxes imposed by section 301 of the Revenue Act of 1918. On this point the petitioner rests its case entirely upon the decision of the United States District Court, New Jersey, in the case of *Mutual Benefit Life Insurance Co.* v. *Duffy*, 295 Fed. 881, in which the court stated as follows:

The government next contends that this reserve is not within that part of section 207 (paragraph [a]), which declares what shall be " invested capital " for like tax purposes. This paragraph declares, as noted, that in the case of corporations such capital includes—

"(1) Actual cash paid in; (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation * * * at the time of such payment, * * * and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year."

All three subdivisions of this paragraph are readily applied to corporations having capital stock, but their wording is inept to mutual corporations, which have no such stock. Subdivision (2) concededly is not applicable. As applied to a stock corporation, subdivision (1) includes only cash paid for capital stock, as cash paid in to surplus is made capital by subdivision (3), and this latter subdivision, similarly applied, is restricted to cash paid in to surplus and earned surplus or undivided profits used or employed in the business. But, inept as the language of these subdivisions is, when applied to mutual life insurance companies having no capital stock, the government insists that such companies are subject to the excess profits tax provisions of this act, and further that, unless this legal reserve can be brought within one or the other of these subdivisions, it cannot be treated as invested capital, and still further that such reserve is not comprehended within any of such subdivisions. As noted, section 200 of the same title (War Excess Profits Tax), declares that the term " corporation," as used in that title, includes " insurance companies." Except for such inclusion, there seemingly would not be even a plausible ground for the effort to include income derived from life insurance business within the grasp of the excess profits tax provisions of the act; but as there are capital stock insurance companies that insure against fire and marine, as well as life, risks, something more than this definition is needed to bring mutual life insurance companies within the tax provisions of this title.

The very ineptness of the language of paragraph (a) of section 207 tends to support the plaintiff's contention that Congress had no purpose to subject mutual insurance companies to this war excess profits tax, and that the insurance companies embraced in the definition of section 207 were confined to stock insurance companies.

However, the question before the court for decision in the case above referred to was not whether the plaintiff was subject to the profits tax imposed by section 200 of the Revenue Act of 1917, but rather, whether the plaintiff was entitled to include in its invested capital the legal reserves the net additions to which were

deductible in computing the net income subject to the tax, which the Commissioner had excluded. That the above quoted statement of the court as to the liability of the plaintiff for excess profits taxes was mere *obiter dictum* is evident from the court's further statement that—

However, as mutual life insurance companies are not expressly excluded from the excess profits tax provisions of the act, and assuming for the sake of argument that Congress had no intention of so excluding or exempting them, it must be further assumed that Congress did not intend to exclude them from the benefit of paragraph (a) of this section, notwithstanding its ineptness, if they had capital, the income from which was subject to the excess profits tax provisions of the act.

While much may be said for the views expressed by the court as to the ineptness of section 207 of the Revenue Act of 1917 when applied to mutual life insurance companies, we find no considerable difficulty in applying the provisions of section 326 of the Revenue Act of 1918 (a similar section) to this petitioner. It is true that the petitioner has no capital stock, and that the provisions of subdivisions (1) and (2) of section 326 of the Revenue Act of 1918 are, therefore, inapplicable in its case. But if all that the petitioner has, and which it is entitled to include in invested capital, has been acquired without consideration or out of its earnings, then its invested capital is comprised entirely of its paid-in or earned surplus. There appears no good reason to assume that Congress intended to limit the application of subdivision (3) of section 326 to corporations or other organizations having capital stock. On the other hand, we think it applies to every corporation or other organization subject to the profits tax; and if the petitioner's entire capital was acquired through paid-in or earned surplus, then its invested capital must be computed under the provisions of subdivision (3) of section 326.

Section 230(a) of the Revenue Act of 1918 imposes an income tax, and section 301 of the same Act a profits tax, upon the net income of "every corporation." Section 231 specifies what organizations shall be exempt from the income tax and section 304(a) provides that such organizations shall, to the extent that they are exempt from the income tax, be exempt from the profits tax. Section 1 provides that the term "corporation," wherever used in the Act, shall include "associations, joint-stock companies, and insurance companies." It is evident then that, unless petitioner can qualify as one of those organizations exempt from tax under the provisions of section 231 of the Revenue Act of 1918, it is subject to both the income and the profits taxes. That it can not qualify for exemption under the provisions of subdivisions (3), (6), and (10) of section 231, we have already decided; that it can not qualify for exemption under any of

the other subdivisions of section 231 is evident from a mere reading of their provisions, and exemption has not been claimed under them.

Petitioner's next proposition is that the amounts contributed to the relief fund in 1919 and 1920 by the Associated Companies and the United States Railroad Administration represent property " acquired by gift," within the purview of section 213 (b) (3) of the Revenue Act of 1918, and, therefore, are to be excluded in computing its taxable income. The Philadelphia & Reading Railroad Co. was a party to petitioner's organization. There appears to have been some sort of an agreement between the Railroad Company and the petitioner, but this was not put in evidence. Counsel for Commissioner offered in evidence a copy of the resolution adopted by the board of directors of the Philadelphia & Reading Railway Co. on November 18, 1896, and at the same time petitioner's counsel stated that this resolution embodied everything contained in the agreement. The resolution is set out in our findings of fact. The Commissioner lays great stress upon that part of the resolution which states " WHEREAS, the operation of the said association has been to the mutual advantage of the Company and of the said employees," accepting this statement as an indication that the contributions of the Associated Companies were made as a purely business arrangement and in consideration of some benefit flowing directly to them. Upon this theory the Commissioner proposes to include the amount of these contributions in the petitioner's taxable net income. In this we believe the Commissioner to be right. The amount contributed by the Reading Company to this fund is in no proper sense a charitable contribution. It is a purely business enterprise in which the Reading Company is participating. That membership in the Association tended to keep down damage suits and otherwise to keep employees contented we have no doubt, even though there may have been no direct provision that the receiving of relief from the Association would appear as a bar to the recovery of a judgment secured as a result of a suit at law. In the case of *Johnson* v. *Philadelphia & Reading R. R. Co.*, 29 Atl. 854, the court held specifically that the acceptance of benefits from the taxpayer Association by an employee injured in line of duty constituted a release to the Reading Company. It is not necessary for us to accept this holding of the court as a correct statement of the law in order to be satisfied that the amounts contributed are not donations in any proper meaning of that term. In our opinion the contributions made by the Reading Company are income to the petitioner, and, accordingly, subject to tax.

The fifth and last proposition is whether, in computing its taxable net income, the petitioner is entitled, under the provisions of section 234 (a) (11) of the Revenue Act of 1918, to deductions representing

net additions (not required by law) to its reserve fund for the protection of its members. The section referred to reads as follows:

SEC. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

*        *        *        *        *        *        *

(11) In the case of corporations issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan continuing for life and not subject to cancellation, in addition to the above, such portion of the net addition (not required by law) made within the taxable year to reserve funds as the Commissioner finds to be required for the protection of the holders of such policies only.

Granting for the moment, but entirely reserving decision in this respect, that the membership certificates, of which the governing regulations form a part, are policies within the meaning of the above quoted provisions of the statute, we do not believe that the foregoing provisions of the statute are applicable to the petitioner. The contributions of the members are not on the weekly payment plan, but are on the monthly basis; and the health and accident benefits are available to members only so long as they continue in the active service of one of the Associated Companies.

Counsel with some force argues that the petitioner is of such a character and fulfills such functions as to justify its inclusion within the series of exempt organizations set forth in section 231. This may indeed be true, and it may very well be that Congress would have provided exemption had the petitioner here been given specific consideration in the enactment of the exemption legislation. As to this we are given no power to consider. The wisdom or unwisdom of the legislation is not a consideration upon which our decision may be founded. Our consideration is restricted to determining whether the language employed in the statute, when fairly construed, includes the organization now under consideration, and, thus restricted, we are constrained to hold that the petitioner is not within the exemption.

. *Judgment for the Commissioner.*

TRUSSELL dissents.