HENRY F. COE *vs.* WASHINGTON MILLS & others.

Suffolk.　April 1, 2, 1889. — June 26, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Public Charity — Resulting Trust — Voluntary Association.*

A relief society was formed by the employees in the mills of a manufacturing corporation to aid sick or injured members, its regulations providing that every such employee must be a member; that membership was to cease on leaving the employment of the corporation; that a board of government should be chosen from the superintendents and overseers in the mills; that the corporation and the employees were to contribute each a certain sum weekly to the funds of the society; that the employees were to make their contributions every pay-day, when they received their wages, to the paymaster, who was to hand them over to the treasurer of the society; that sick members should receive a weekly allowance for a certain time; and that a member was not to receive aid until he had been so employed and had regularly contributed for a term of weeks. *Held,* that the society was not a public charitable institution, but that its funds were held by its board of government, in whom was the legal title, upon a private trust for the benefit of its members.

The society existed for many years, until it came to an end upon the dissolution of the corporation, before which time, however, the board of management voted to hand over the funds of the society then remaining to a charitable organization. All the contributors except the corporation assented to the carrying out of its vote. *Held,* that after the society ceased to exist the board held the fund on a resulting trust for the contributors, and that, after paying the corporation its share, the board should pay over the remainder to such charitable organization.

BILL IN EQUITY, filed April 18, 1888, in the nature of an interpleader for instructions as to the disposition of a fund in the hands of the plaintiff. The case was heard by *Devens,* J., who reported it for the consideration of the full court, and was as follows.

The plaintiff is the treasurer of the Washington Mills, a corporation located at Lawrence. The defendants who appear are the Washington Mills, the Ladies' Union Charitable Society, a corporation also located at Lawrence, and the treasurer and managers of the Washington Mills Relief Society. An order of notice to all other persons who had been members of the relief society was issued and duly served by publication, and, no one appearing, the bill was taken as confessed as against such members.

The Washington Mills was incorporated in 1859, for the manufacture of cotton and woollen goods. In 1868 its employees formed an association called the Washington Mills Relief Society, and adopted " regulations," which, so far as material, were as follows :

" 1. The Washington Mills Relief Society is formed for the purpose of extending aid to the sick and to those who may meet with accident while employed here. The Washington Mills corporation shall pay three dollars weekly to its funds.

" 2. Every individual employed by the Washington Mills corporation at Lawrence must be a member of this society. Membership will cease on leaving the employment of the Washington Mills.

" 3. The officers of the society shall be a president, treasurer, and secretary, with twelve managers, chosen annually the first week in April by and from the superintendents and overseers. These together shall compose a board of government; decide points of dispute, and manage the internal affairs of the society. Five members of the board of managers at a regularly called meeting shall constitute a quorum for the transaction of business. . . .

" 5. All disbursements ordered by the board of government shall be made by the treasurer, who shall not retain in his possession more than twenty-five dollars at the close of any week, but shall deposit the surplus with the treasurer of the corporation, who agrees to return the sum deposited whenever called for by the treasurer of the society, in whose name the funds shall stand. . . .

" 8. The regular contributions of the members shall be made every pay-day, at the time of receiving their wages, to the pay-

master, who shall forthwith hand over the same to the treasurer of the society.

" 9. Every member shall pay four weeks' contributions on entering, and three cents a week thereafter. If a member is discharged from the Washington Mills for dishonesty, drunkenness, insolence, or any crime, he shall not receive any contribution whatever.

" 10. The weekly allowance to sick members shall be two dollars. . . .

" 11. No member shall be entitled to aid who shall not have regularly contributed for at least eight weeks, and been employed by the Washington Mills for the same length of time. But the board shall have power to grant a donation to persons who may be disabled by accident while at work, if employed for a less time than eight weeks, if in their judgment the state of the funds will warrant it.

" 12. The allowance to sick members may continue ten weeks; it shall then be reduced one fourth, and may be extended twenty weeks longer, should sickness continue. At the end of thirty weeks the allowance shall cease entirely; provided that no member shall receive more than fifty dollars in any one year, except by a vote of the board of government. . . .

" 15. The overseers shall be stewards of their respective rooms, and have power to appoint assistant stewards as they may deem necessary and proper, whose duty it shall be to visit, once each week, the sick whose residence does not exceed two miles' distance from the mills, to make particular inquiries as to the state of illness, and to see that the invalid is well cared for. Any steward who neglects to visit a sick member within two days after receiving notice of sickness shall be fined twenty-five cents for every instance of neglect. . . .

" 18. Any member shall have the right of appeal to the directors of the corporation, or their representatives in Lawrence, whose decision shall be final, in case of dissatisfaction with any acts of the board of government.

" 19. These regulations shall be altered or amended only by a vote of two thirds of the board of government, at a meeting specially called for that purpose."

From 1868 to 1885 two thousand persons on the average were

in the employ of the mills, changing daily, all of whom became members of the relief society and contributed to its funds. Early in 1885 the Washington Mills proceeded to wind up its affairs, and discharged its employees, at which time the plaintiff had in his hands $10,194.28, as the residue of funds which had been deposited with him by successive treasurers of the relief society, and which he desired to pay over to those entitled thereto. At the last meeting of the board of government of the relief society, held on June 25, 1884, and duly called, the following vote was passed: "Voted, on motion of Mr. Ezra Cox, that, in case of a dissolution of the corporation, the fund of the relief society be put into the hands of the Ladies' Union Charitable Society, in trust, the principal to be invested, and the interest therefrom to be applied to the support of free beds in their hospital, for the benefit of the operatives of the Washington Mills, or their successors, preference being given to the former operatives; in case none apply, then the free beds may be used for the benefit of others deserving them." The Ladies' Union Charitable Society maintains a hospital in Lawrence for the relief of the people of that city and others. No meetings of the board of managers or of the relief society have been held since that date, and the plaintiff still holds the funds of the society.

The Washington Mills contended that it was entitled to have the fund paid directly to it; the treasurer of the relief society contended that the fund should be paid to him as such; the Ladies' Union Charitable Society contended, with the assent of the defendant managers of the relief society, that the fund should be paid over to it.

*R. F. Sturgis,* for the plaintiff, read the papers in the case.

*E. T. Burley & C. U. Bell,* for the Ladies' Union Charitable Society.

*C. K. Cobb,* for the Washington Mills.

MORTON, C. J. The Washington Mills Relief Society was a voluntary association, formed, as its "regulations" state, "for the purpose of extending aid to the sick and to those who may meet with accident while employed here." By its "regulations," which were the only articles of association, "Every individual employed by the Washington Mills corporation at Lawrence must be a member of this society. Membership

will cease on leaving the employment of the Washington Mills." The corporation was to pay "three dollars weekly to its funds," and each member was to pay "four weeks' contributions on entering, and three cents a week thereafter," the contributions of the members to be "made every pay-day, at the time of receiving their wages, to the paymaster, who shall forthwith hand over the same to the treasurer of the society." The regulations further provided, that "the weekly allowance to sick members shall be two dollars"; that the allowance may be continued ten weeks; and that it shall then be reduced one fourth, and may be extended twenty weeks longer, "provided that no member shall receive more than fifty dollars in any one year, except by a vote of the board of government." No member was entitled to aid "who shall not have regularly contributed for at least eight weeks, and been employed by the Washington Mills for the same length of time."

We have stated enough of the regulations to show the purpose and scope of the association. It was a voluntary association for the mutual benefit of its members, and cannot be held to be a public charitable institution. To constitute a public charity, there must be an absolute gift to a charitable use for the benefit of the public. In this case the contributions of the members were not gifts for a charitable use for the benefit of the public, but they were payments for their own advantage, and were in the nature of premiums for insurance against sickness and accidents. Each member paid a regular fee or assessment, and in consideration thereof he became entitled to a certain benefit in case of sickness or accident, as a personal right. He could enforce this before the tribunal provided in the regulations, viz. the directors of the Washington Mills, and if no such tribunal had been provided, he could enforce it in a court of law. *Dolan* v. *Court Good Samaritan*, 128 Mass. 437. *Bauer* v. *Samson Lodge*, 102 Ind. 262.

No private person can maintain an action to enforce the exercise of a public charity in his favor. As is stated in *Attorney General* v. *Federal Street Meeting-house*, 3 Gray, 1, 50, "A public charity, in legal contemplation, is derived from gift or bounty; . . . but where a fund is derived from rates and assessments, being in no respect derived from bounty or charity, it is

not charitable. So a subscription by a benefit society, for mutual relief, is to a private, and not a public charity, and does not require the intervention of the Attorney General." See *Old South Society* v. *Crocker,* 119 Mass. 1, 24. *Saltonstall* v. *Sanders,* 11 Allen, 446, 464.

The contributions of the members were not in their nature, and were not intended to be, gifts for a general public use, but were for the advantage of the members only. *Swift* v. *Easton Beneficial Society,* 73 Penn. St. 362. *Bangor* v. *Rising Virtue Lodge,* 73 Maine, 428. *Donohugh's appeal,* 86 Penn. St. 306.

It is true that the contributions by the corporation were of a different character, but they did not change the general scheme or purpose, and they were, we think, gifts to a private use, and not to a public charity.

We are, for these reasons, of the opinion that this is not a case of a public charity, in which, under the doctrine of *cy pres,* we can by a decree devote the funds which have accumulated to a public charitable use.

The society was in operation for about seventeen years, and a fund amounting to about ten thousand dollars had accumulated, when it came to an end by the dissolution of the Washington Mills corporation. The next question is, In whom is the title to this fund?

It was a voluntary association of peculiar character. The corporation was not a member, but practically it had, by virtue of its right to change its employees, the power to change the membership of the society and of the board of management. The members generally had no vote or voice in the management of its affairs, which were controlled by a " board of government," chosen annually " by and from the superintendents and overseers." In effect, the assessments of the members and the contributions of the corporation were placed in the hands of this " board of government," for certain purposes prescribed in the regulations. They had no right to apply them to any other purpose. The legal title to the fund was in them, but they held it upon the trusts prescribed. When the corporation was dissolved, the society ceased to exist and the trusts failed. The regulations made no provision for such a contingency, and we think that the board, after the failure of the trusts, held the

fund, not for its own benefit, but for the contributors and donors as a resulting trust. *Easterbrooks* v. *Tillinghast*, 5 Gray, 17. *Sears* v. *Hardy*, 120 Mass. 524. 2 Story Eq. Jur. § 1200.

If the corporation had contributed the whole of the funds, not as a public charity, but for the support of this particular society during its life, it would seem to be very clear that at the death of the society the accumulated fund ought to go to it by way of a resulting trust. No one else could present any claim to it. The principle is not changed because the contributors are in fact very numerous. We are therefore of opinion, that at the extinction of this society the board of government held the fund in question for the benefit of all the contributors, and that they are entitled to it, each in proportion to the amount contributed by him. The amount contributed by the corporation is not precisely fixed, but it appears to be about five per cent of the whole amount. It is entitled to this proportion, and, if the parties desire it, the case may be referred to a master to determine the exact amount. We are not able to see any ground upon which its claim to the whole of the fund can be sustained.

In dealing with the question of the disposition of the residue, it is necessary to refer to some further facts which exist in the case. At a meeting of the board of government of the relief society held on June 25, 1884, it was " Voted, on motion of Mr. Ezra Cox, that, in case of a dissolution of the corporation, the fund of the relief society be put into the hands of the Ladies' Union Charitable Society, in trust, the principal to be invested, and the interest therefrom to be applied to the support of free beds in their hospital, for the benefit of the operatives of the Washington Mills, or their successors, preference being given to the former operatives ; in case none apply, then the free beds may be used for the benefit of others deserving them." The board of government now desire to carry out this vote. Personal service in this suit was made upon several of the former members of the relief society, who appear and announce that they each and all disclaim any joint or several right, title, or interest in said fund adverse to the rights of said Ladies' Union Charitable Society, acquired by the vote set forth in said bill, and request that said fund be decreed to said charitable

society under the terms of the vote aforesaid. Notice by pub lication was served upon all who have been members of the re lief society ; no one appears, and as to them the bill has been taken *pro confesso.* The defendants, who have been defaulted, must be deemed to have abandoned their claims to the fund, or to have assented to the disposition of it according to the above vote. As to the residue, after paying the corporation its pro portion, the board of government hold the legal title, and have the assent of all parties equitably interested that it may be paid according to its vote. We see no reason why it may not do so, and discharge itself of all responsibility.

We cannot agree with the argument that the board of government had the power under the regulations to dispose of the whole of this fund. The powers given them " to decide points of dispute, and manage the internal affairs of the society," were intended to apply to the ordinary business of the society and the management of its prudential affairs, and do not extend to the disposal of the funds in any other way than those prescribed by the regulations.          *Decree accordingly.*