YOUNG MEN'S PROTESTANT TEMPERANCE AND BENEVOLENT SOCIETY *vs.* CITY OF FALL RIVER.

Bristol.    December 5, 1893. — January 6, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Tax — " Benevolent " or " Charitable " Society — Statutes.*

An association, organized under Pub. Sts. c. 115, for " the promotion of temperance, mutual relief, assistance, and culture, and charity and benevolence," whose principal income is derived from a fixed, regular compulsory contribution from its members, which is to constitute a fund to be used exclusively for the benefit of the members, is not either a " benevolent " or a " charitable " society, within the meaning of Pub. Sts. c. 11, § 5, cl. 3, as amended by St. 1889, c. 465, exempting, under certain conditions, the property of such a society from taxation.

CONTRACT, to recover the amount of taxes assessed upon the plaintiff's property, and paid to the defendant under protest. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, upon agreed facts, the material parts of which appear in the opinion.

*A. J. Jennings*, for the plaintiff.

*E. Higginson*, for the defendant.

FIELD, C. J.  The plaintiff is a corporation organized under Pub. Sts. c. 115, and owns real estate in the city of Fall River. It contends that this real estate is exempt from taxation under Pub. Sts. c. 11, § 5, cl. 3, as amended by St. 1889, c. 465.  This clause exempting property from taxation as amended is as follows: " Third, the personal property of literary, benevolent, charitable, and scientific institutions and temperance societies incorporated within this Commonwealth, and the `real estate belonging to such institutions occupied by them or their officers for the purposes for which they were incorporated; but such real estate, when purchased by such a corporation with a view to removal thereto, shall not prior to such removal be exempt for a longer period than two years; but none of the real or personal estate of such corporations organized under general laws shall be exempt when any portion of the income or profits of the business of such corporations is divided among their members or stockholders, or used or appropriated for other than literary, educational, benevolent, charitable, scientific, or religious purposes."

It is stated in the agreed statement of facts, that the society was organized "for the purpose, as appears in its certificate of incorporation, of the promotion of temperance, mutual relief, assistance, and culture, and charity and benevolence."  The constitution and by-laws which are referred to show that it is not a literary or scientific society.  It is contended that it is a benevolent or charitable institution, and a temperance society within the meaning of St. 1889, c. 465.  The constitution and by-laws provide that the members must be of the Protestant religion, that "no member shall make, buy, sell, or use any spirituous or malt liquors, wine, or cider, unless when ordered by a physician," and that there shall be two classes of members, namely, "full members and non-benefit members."  Const. art. 2, §§ 1, 2. The rights of the members are as follows: " A full member shall be entitled to all the rights and benefits of the society, as provided for in the constitution and by-laws."  § 3.  " A non-benefit member shall not receive any of the benefits of the society, shall not be qualified to hold any office in the society, shall not vote upon any subject of charity or benefits, but in all other respects

shall be equal to a full member." § 4. To become a full member, the candidate must pass the doctor's examination and be found to be in good health. § 5.

It appears in the agreed statement of facts, that " Every full member pays into the general fund of the association sixty cents monthly, and every non-benefit member twenty-five cents monthly; every full member also pays into said fund twenty-five cents quarterly as a doctor's fee. From this fund all the expenses of the society are paid, including all benefits paid to members and all expenses in connection with its real estate. In case of the sickness of a member, he is entitled to consult the doctor of the society at its expense, and to draw from said fund five dollars a week for a term not exceeding six months. In case of the death of a member, the sum of fifty dollars is paid as a funeral benefit." See By-Laws, art. 2, §§ 4, 5, 6; art. 4, §§ 1, 2, 3. There are provisions in the by-laws for the appointment of a visiting committee to visit " sick brothers," and to " notify two of the members . . . to attend upon each sick brother during the night," and in certain cases to employ a nurse at the expense of the society. By-Laws, art. 3.

It is plain that this is in part a temperance society, and in part a mutual aid and relief society, and that the relief and assistance afforded are limited to its members. What is called the benevolence or charity of the society is shown in taking care of its sick members, and in paying fifty dollars towards the funeral expenses of its deceased members. To be entitled to the exemption claimed the plaintiff must show that it acts exclusively as a temperance society, or as a benevolent or a charitable institution, or as some two or all of these combined. By the terms of the statute its real estate must be occupied by the society or its officers for the purposes for which it was incorporated, and the income or profits of its business must not be divided among its members or stockholders, or used or appropriated for other than literary, educational, benevolent, charitable, scientific, or religious purposes.

In *Saltonstall* v. *Sanders*, 11 Allen, 446, 464, it was said: " There is a species of organization, sometimes called a ' private charity,' which is not a public or general charity in the view of the St. of Eliz. or of a court of chancery; and that is an associa-

tion for the mutual benefit of the contributors and of no other persons. But such a case wants the essential element of indefiniteness in the immediate objects, if not that of gratuity in the contribution." Similar societies have been regarded in the law, not as charitable institutions, but as of the nature of mutual insurance societies or mutual benefit societies. *Dolan* v. *Court Good Samaritan*, 128 Mass. 437. *Coe* v. *Washington Mills*, 149 Mass. 543. See *Bolton* v. *Bolton*, 73 Maine, 299; *Bangor* v. *Masonic Lodge*, 73 Maine, 428.

It is contended, however, that the word " benevolent " in the statute has a broader meaning than "charitable," and that the society is a temperance and benevolent institution. The word "benevolent" when used in connection with "charitable" has often been construed as synonymous with charitable. *Saltonstall* v. *Sanders*, 11 Allen, 446, 465–470. *Suter* v. *Hilliard*, 132 Mass. 412. Whether the two words in St. 1889, c. 465, must be held in all respects to have identically the same meaning or not, we think that they must be construed as intended to describe institutions of a similar kind, and we are of opinion that the plaintiff is not a benevolent society within the meaning of the statute. A society whose principal income is derived from a fixed regular compulsory contribution from its members, which is to constitute a fund to be used exclusively for the benefit of its members, cannot be held to be either a benevolent or a charitable society within the meaning of the statute. Without considering other objections, we are of opinion that on this ground, which is the ground on which the presiding justice of the Superior Court found for the defendant, the judgment must be affirmed.

*So ordered.*