## ASSOCIATED HOSPITAL SERVICE CORPORATION OF MASSACHUSETTS v. HASSETT, Former Acting Collector of Internal Revenue.

### Civil Action No. 671.

District Court, D. Massachusetts.

March 26, 1941.

Roger W. Hardy, of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and C. Keefe Hurly, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and

Lyle M. Turner, Assts. to Atty. Gen., for defendant.

McLELLAN, District Judge.

This is an action to recover an excise tax paid by the plaintiff to the defendant. The right to maintain the action depends, as the parties agree, upon whether the plaintiff is a corporation "organized and operated exclusively for * * * charitable * * * purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual" within the meaning of these words as they appear in the Social Security Act and the Internal Revenue Acts. See Section 811 (b) (8), Title VIII of the Social Security Act, 42 U.S.C.A. § 1011 (b) (8), and U.S.C.A. Int.Rev.Code, Title 26, Section 1426 (b) (8). If such a charity, the plaintiff was not subject to the tax (see the taxation provisions of Title VIII of the Social Security Act and of the Internal Revenue Code applicable to Social Security taxes in U.S.C.A. Int.Rev.Code, Title 26), and it was erroneously collected.

### Findings of Fact.

The case was heard upon an agreed statement of most of the material facts and upon the testimony of a single witness. The "Stipulation" containing agreed facts is incorporated herein by reference, and the facts are found to be as there set forth. The history of the movement for hospital service plans or as it is sometimes called the Blue Cross movement, I find to be substantially as described by Mr. Reginald F. Cahalane, who was called as a witness by the plaintiff. His description of the way in which the plaintiff's work was and · is conducted is also accepted as true. Portions of the facts heretofore found by adoption of the agreed facts and the acceptance of Mr. Cahalane's testimony, and some inferences of fact based thereon, follow:

The plaintiff is a corporation organized in March, 1937, pursuant to Chapter 176A of the Massachusetts General Laws as added by Chapter 409 of the Acts of 1936. This Act is entitled "Non-Profit Hospital Service Corporations", and it provides in part as follows: "Section 10. Exemption from taxation. Every corporation subject to this chapter is hereby declared to be a charitable and benevolent corporation, and its property shall be exempt from state, county, district and municipal taxes."

The plaintiff's charter authorizes it to establish, maintain and operate a non-profit hospital service plan, whereby hospital care may be provided by it or by a hospital with which it has a contract for such care.

The by-laws, a copy whereof is referred to as Exhibit C in the "Stipulation", are consistent with the statute and the charter. Pursuant to its charter and by-laws the plaintiff contracts with participating hospital members for the care of its subscribers. As stated by Mr. Cahalane, the plaintiff's primary interest was and is "in that great middle class of people who find it most difficult to meet the cost of hospitalization." The forms of contract between the plaintiff and the hospitals state in substance that the rates for which the contracts provide are subject at all times to change by the plaintiff's Board of Directors, with the approval of the Massachusetts Department of Public Welfare. They state also that in case of conditions occasioning an excessive demand for hospital care beyond the plaintiff's ability to pay, the member hospitals agree that a pro rata deduction may be made. This was done once in 1939. The forms of contract with the hospitals and of the subscribers' certificates are a part of the record and need not here be described further except to say they are designed to meet the public need for hospital care. If, in any year, the amount received from subscribers exceeds the outgo, this excess is not distributable to the subscribers for that year. As long as the plaintiff continues to function, such excess might inure to the benefit of future subscribers in reduced cost of hospitalization, but in case of dissolution of the corporation, the Attorney General would have like powers in reference thereto as in the case of any other charity. The following excerpts from the "Stipulation" show how the plaintiff has grown:

"(10) From the organization of the plaintiff on March 11, 1937 to December 31, 1937 the plaintiff received earned income of $6,151.19, spent for administration $17,-354.11 and for hospitalization $4,393."

"(11) During the year 1938 the plaintiff received earned income of $425,182.20, spent for administration $108,624.17 and for hospitalization $323,810.87."

"(12) During the year 1939 the plaintiff received earned income of $1,453,559.25, spent for administration $181,452.20 and for hospitalization $1,109,425.28."

"(13) During the year 1940 the plaintiff received earned income of $1,840,645.54, spent for administration $220,305.24 and for hospitalization $1,308,954.55."

Organizations similar to the plaintiff exist in about thirty-eight states of the Union. A like corporation for the District of Columbia was set up by an Act of the Congress which was approved August 11, 1939, 53 Stat. 1412. This Act declares that the corporation created thereby is "a charitable and benevolent institution, and all its funds and property shall be exempt from taxation other than taxes on real estate." Section 8.

The tax of $220.68 here involved was assessed for the part of the year March 11 to December 31, 1937, and was paid September 14, 1939. All things have happened entitling the plaintiff to maintain the action if the issue hereinbefore described is decided in its favor.

Upon the whole record, I find, so far as such findings may be regarded as findings of fact as opposed to conclusions of law, as follows:

1. The taxpayer is a corporation organized and operated exclusively for charitable purposes within the meaning of the applicable Acts of Congress.

2. No part of the taxpayer's net earnings inure to the benefit of any private shareholder or individual.

3. No one suggests the contrary and I find, in the words of the statute (Section 811 (b) (8), supra), that "no substantial part of the activities of which [the taxpayer] is carrying on propaganda, or otherwise attempting, to influence legislation."

4. The plaintiff is entitled to judgment against the defendant in the sum of $220.68 and interest according to law.

### Conclusions of Law.

In view of the Massachusetts statute declaring that such a corporation as the plaintiff is a public charity exempt from State taxation, the plaintiff's purposes and performances, the required disposition of its receipts and profits, and in the light of the Act of Congress declaring a like corporation to be a charitable and benevolent institution exempt from taxation of the kind here involved, the plaintiff is a "corporation * * * organized and operated * * * for * * * charitable * * purposes * * * no part of the net earnings of which inures·to the benefit of any private shareholder or individual" within the meaning of these words as they appear in the pertinent taxing acts.

Judgment is to be entered for the plaintiff in the sum of two hundred and twenty dollars and sixty-eight cents ($220.68), with interest according to law from September 14, 1939.