**SMITH v. REYNOLDS, Collector of Internal Revenue.**

**No. 47 Civil.**

District Court, D. Minnesota, Third Division.

Feb. 19, 1942.

Frederic D. McCarthy, of St. Paul, Minn., for plaintiff.

Linus J. Hammond, Asst. U. S. Atty., of St. Paul, Minn., for defendant.

SULLIVAN, District Judge.

This is an action brought to recover social security taxes claimed to have been erroneously and illegally assessed for the years 1936, 1937 and 1938, amounting in the aggregate, with interest, to the sum of $6,296.93.

The plaintiff has filed returns and paid said taxes under protest, under the provisions of Titles VIII and IX of the Social Security Act, Sections 801 et seq., 901 et seq., 1001 et seq., and 1101 et seq., 42 U.S. C.A. Claim for refund was filed by the taxpayer and more than six months elapsed prior to the commencement of this suit, no decision having been rendered by the Commissioner on said claim for refund.

The facts in this case have been stipulated, and may be summarized as follows:

The Northern Pacific Beneficial Association, hereinafter referred to as the "Association", is a voluntary association of persons, now or formerly working for the Northern Pacific Railway Company, hereinafter referred to as the "Railway Company". The object of the Association, as set out in its constitution, is "the medical, surgical and hospital care of its members".

The constitution of the Association provides that its membership "shall include all employees of the Northern Pacific Railway Company", all members of the Association, and all members of such other corporations in which the Railway Company may own a majority of the stock, and such as the Board of Directors of the Association may

512

decide to receive into its membership under the rules, regulations and constitution of said Association.

The constitution of the Association also provides for membership dues of one per cent. of the employee's monthly earnings, with a minimum of 75 cents and a maximum of $1.50 monthly, and an additional assessment of 25 cents per member per month may be levied when, in the opinion of the Board of Directors the same may be deemed advisable. Provision is also made for members who are retired from the service with a pension to continue their membership in the Association on the payment of one per cent. of their monthly pension allowance, with a minimum of 50 cents and a maximum of $1.50 per month. There is provision made also for the continuance of membership in the Association of such members as may be on leave of absence, upon the payment by such persons of certain monthly assessments.

The by-laws of the Association provide that all persons who accept employment with said Railway Company or Association shall from that date be considered members of the Association, and entitled to its benefits. Membership, however, is dependent upon the payment of prescribed dues, and if members fail to pay the dues imposed upon them in advance they shall "automatically forfeit their membership and rights to benefits."

The by-laws also set out certain exceptions from membership, among which are persons temporarily employed by the Railway Company and persons who, before entering the service, were afflicted with chronic diseases or congenital conditions. The benefits accruing to Association members are medical and surgical care and attention, hospitalization and nursing care, in case of accident or illness. Care outside of the Railway Company's hospitals is also contemplated under certain conditions. Medical and surgical treatment is limited to six months to the members who may be incapacitated for work by illness or accident, except that in certain cases and under certain conditions the time of such care may be extended at the discretion of the Association's chief surgeon. The Association maintains a full-time staff of doctors, nurses and other employees, four general hospitals and one emergency hospital, at different locations along the line of said Railway Company. The Railway Company makes cash contributions of $5,000 each month to the Association, partially as a lump-sum payment for the care of its employees injured as the result of accidents while on duty, and partially as a pure contribution. The proportions to be allocated for each of said purposes does not appear. The Railway Company makes further contributions to the Association in the way of services of certain of its departments. The Association never distributed any money as earnings among its membership. Any money which the Association had on hand has gone into the improvement of its present properties and the extension of its service. It now has a membership of approximately 21,000 persons. It accepts some pay patients, and also some charity cases.

It is the contention of the plaintiff that the Association is organized and operated exclusively for charitable purposes, and that no part of its net earnings inures to the benefit of any private shareholder or individual, and that by reason thereof, it is exempt from making the payments required by the Social Security Act and the Revenue Act of 1936.

On the other hand, the defendant contends that the Association is not organized for charitable purposes, but is organized for the mutual benefit of its membership, and that indirectly the earnings of the Association inure to the benefit of its membership, and that by reason thereof it is not entitled to the exemption claimed.

The Revenue Act of 1936 and the Social Security Act require payments to the government, based on the earnings of employees. Certain corporations, associations and organizations are exempted from the provisions of said Acts.

Section 101(6) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 101(6), so far as the same is here pertinent, provides:

"The following organizations shall be exempt from taxation under this chapter—

     *        *        *        *        *

"(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for * * * charitable * * * purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, * * *."

The pertinent provision of Section 811 (b) (8), 42 U.S.C.A. § 1011(b) (8), relating to Title VIII of the Social Security Act (employees), and Section 907(c) (7) of

the same Act, 42 U.S.C.A. § 1107(c) (7), relating to Title IX (employees) of the Act, the language of each of said Sections being identical, is as follows:

"The term 'employment' means any service * * * except—

\* \* \* \* \*

"Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for * * * charitable * * * purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual."

Was the Association operated exclusively for charitable purposes?

[██] It is reasonably accurate to state that the word "charity" means a gift without any hope on the part of the donor, based on legal or moral right, of any material benefits being realized therefrom by him. Webster's New International Dictionary states that "charity" means, among other things, "Whatever is bestowed gratuitously on the needy or suffering for their relief; an eleemosynary foundation or institution; an institution founded by a gift and intended for the use of the public, as a hospital, library, school, etc." A charity is a gift without material reward or consideration, and this holds true whether the same was prompted by ulterior motives or not. For definitions of "charitable institution" and "charity", see County of Hennepin v. Brotherhood of the Church of Gethsemane, 27 Minn. 460, 8 N.W. 595, 38 Am.Rep. 298, and Jackson v. Phillips et al., 14 Allen 539, 556, 96 Mass. 539, 566. A charitable institution is one established, maintained and operated for the purpose of taking care of the sick, without any profit or view of profit, but at a loss which has to be made up by benevolent contributions.

Here the Railway Company has made appreciable contributions to the Association each year. These were gifts on the part of the Railway Company, but are the payments made each month, by the members of the Association, gifts? I think not. Under the constitution and by-laws of the Association, these monthly payments by the members purchase and entitle them to certain benefits—medical care and attention, hospitalization and nursing, in case of injury or sickness; and in the event of the death of a member, a burial benefit is provided for. The member is entitled to the benefits as a matter of right, so long as he pays the dues required of him. But if he should fail to pay the monthly assessment or dues, his membership in the Association is automatically forfeited, along with any rights to the benefits provided for in the by-laws.

In passing on like contentions as are here made, the Board of Tax Appeals, in Appeal of Philadelphia & Reading Relief Association, 4 B.T.A. 713, 728, had this to say: "Here, for definite contributions, paid by its members at regular recurring periods, the Association undertakes to pay its members certain definite sums in the event of sickness, accident, or death. Whatever it may be called, the scheme is that of insurance. The relation of the Association to its members is contractual, rather than charitable. Nor is it a benevolent institution. No aid is furnished from generosity or liberality. None such is pretended. On the contrary, for a pecuniary consideration the Association agrees to pay a definite sum in the cases specified." See also Hassett v. Associated Hospital Service Corporation of Massachusetts, 1 Cir., 125 F.2d 611, reversing D.C., 37 F. Supp. 822.

This Association is a beneficial one for the benefit of its members. It was not created for the purpose of extending benevolence, nor was it created for the purpose of benefiting the public generally. Neither was it created for the purpose of extending gratuitous services and assistance to any particular class. The relationship existing between the members and the Association is based on contract. In consideration of the payment of dues by the members, and only because of the payment of such dues, the Association obligates itself to do certain things.

[██] There can be little question but that a voluntary association for the mutual benefit of its members may, without difficulty, be distinguished from a public charitable institution. These distinctions have been considered by the Courts and textwriters. See: Coe v. Washington Mills et al., 149 Mass. 543, 21 N.E. 966; Young Men's Protestant, etc., Society v. City of Fall River, 160 Mass. 409, 36 N.E. 57; 11 Corpus Juris, p. 305; 14 C.J.S., Charities, § 2; 7 Corpus Juris, p. 1051; 10 C.J.S., Beneficial Associations, § 1; 19 Ruling Case Law, 1182, section 5.

[██] It clearly appears that the Association was organized for the mutual benefit

of its members. There is no evidence that it departed from the purposes for which it was organized, nor is there any evidence that it carried on the usual activities of a charitable institution. To be entitled to the exemptions granted by either of the statutes under consideration, an association must be organized and operated exclusively for charitable purposes, with no part of the net earnings accruing to the benefit of its members. It is the general rule of law that the objects and purposes of an organization must be determined from the purposes and objects as declared in the instrument creating it. Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278. The objects of the Association set out in its constitution are stated specifically as being the operation of hospitals for the care and treatment of its members, with the privilege of taking into such hospitals such other persons as may be admitted, as pay patients under certain conditions. There is no indication in its articles that its hospitals were to be conducted as charitable institutions. There is nothing in the evidence to indicate that the major part of the activities of the Association were charitable or benevolent. True, some charity cases were taken care of, but that fact does not in itself make the Association a charitable organization.

There is no evidence that the Association had any net earnings, nor is there any evidence that the members received any profits on their memberships, but these matters are not controlling. The question might be asked, did the members receive any beneficial advantage in other ways than by dividends, by reason of their membership? The members received the benefits provided for in the by-laws when needed, or were entitled to receive them at such times as the same might be required.

"Profit may inure to the benefit of shareholders in other ways than in dividends." Northwestern Municipal Association v. United States, 8 Cir., 99 F.2d 460, 463.

■ It appears that the Association was relieved from the payment of federal income taxes, but under what section and for what years does not appear from the stipulation. The supplemental brief filed by the defendant indicates that exemption was granted to the Association by the Commissioner of Internal Revenue under subdivision (8) of Section 101 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 101(8). It was not, however, granted under subdivision (6) of that Act. To have gained exemption from the payment of taxes imposed by the Social Security Act of 1935 for the years involved, it was necessary that the taxpayer come within the exceptions set out in sections 811(b) (8) of Title VIII and Section 907(c) (7) of Title IX of that Act, 42 U.S.C.A. §§ 1011(b) (8) and 1107 (c) (7). The exemptions provided for in Section 101(6) of the Revenue Act are analogous to the exemptions allowed under the Social Security Act. However, in the Social Security Act there is no similar exemption to that of subdivision (8) of Section 101 of the Revenue Act. Whether that be material in this proceeding it does not seem necessary to determine. The taxes provided for in the Social Security Act are based on the relationship of employee and employer, and not on taxable income. While the collection of social security taxes is entrusted to the Collector of Internal Revenue, as are income taxes, they are separate and distinct forms of taxation. The exemptions allowed and permitted under Section 101 of the Revenue Act are exemptions granted to the enumerated persons and organizations from the payment of income tax, not from the payment of social security taxes, so to determine the exemptions that are permitted under the Social Security Act we must look to that Act's definition of taxable employment.

■ The matters set out in subdivision (16) of Section 101 of Title 26 U.S.C.A. Int.Rev.Code (Revenue Act) did not become effective as an exemption in social security taxes until January 1, 1940. See Revenue Act, August 10, 1939, 26 U.S.C.A. Int.Rev.Code, § 1426(b) (10) (C), 53 Stat. 1385, 1392, § 1607(c) (10) (C).

■ It is my opinion that the tax sought to be recovered in this case was properly imposed and collected, and accordingly judgment should be for the defendant.