RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; SOCIEDAD ESPAÑOLA DE AUXILIO MUTUO Y BENEFICENCIA DE PUERTO RICO, Intervener.

No. 82. Argued May 6, 1946.—Decided November 20, 1946.

*Luis Negrón Fernández, Acting Attorney General (E. Campos del Toro, Attorney General,* on the brief), and *Carlos Santana Becerra, Assistant Attorney General,* for petitioner. *Damián Monserrat, Jr., Gabriel de la Haba,* and *Rafael Baragaño, Jr.,* for intervener, complainant in the main proceeding.

Mr. Justice Snyder delivered the opinion of the court.

The Treasurer assessed 18.70 cuerdas of land and the buildings located thereon belonging to Sociedad Española de Auxilio Mutuo y Beneficencia de Puerto Rico—hereinafter called Auxilio Mutuo—in the amount of $142,210 for the property tax of Puerto Rico for the fiscal year 1941–42. The Tax Court upheld the contention of Auxilio Mutuo that five cuerdas of this land and the buildings thereon were exempt from the property tax by virtue of § 291(e) of the Political Code, as amended by Act No. 12, Laws of Puerto Rico, Spec. Sess. 1933, which establishes this exemption for buildings and the land not exceeding five cuerdas on which such buildings are situated which are used for charitable purposes. We granted the petition of the Treasurer for certiorari to review this decision.

Auxilio Mutuo was organized in 1883 under the Spanish regime. Its Regulations have been in effect without modification since 1900. Section 1 sets forth the purposes for which it was organized: (1) to promote unity among Spaniards and their descendants, to foster their religious sentiments, and to practice charity and mutual aid; (2) to provide care and attention for its members and indigent Spaniards in case of sickness or misfortune; (3) to provide transportation to Spain for members unable to pay therefor in the event they are ill and such a trip is necessary for their treatment; (4) to provide for burial of members and indigent Spaniards; (5) to aid with a single donation the needy families of the deceased, but "these donations and every act of charity will be agreed on in each case by the Board, provided the resources of the association permit it, without prejudice to the mutual aid to which the members are entitled."

Section 2 provides for the establishment of a hospital for the treatment of sick members. Section 3 provides that indigent Spaniards shall also be treated in the hospital. Section 4 authorizes the association to furnish medical attention

to non-members at established rates, provided this does not affect the preferential treatment of members. Section 7 provides that a non-member may not be admitted to the hospital until the doctors advise the Board of his illness and the length of time necessary to cure him; and two members must certify to the insolvency of charity patients, whose admission the Board may grant or refuse.

Section 9 provides that the association will be supported by (1) the initiation fees and monthly dues paid by the members, (2) all extraordinary income and (3) gifts of sympathizers. Section 11 provides that in the events of dissolution of the association, its funds shall be delivered to the Spanish consul for Spanish charity.

Section 14 provides that the members shall be Spaniards and their descendants who reside is the island. The Board under § 15 has the right to accept or reject applications for admission by a secret vote. Section 16 gives members the right to use the hospital facilities of the association and to be treated, but only if they are able to produce their receipts for payment of dues for the previous month.

 It is not enough under our statute that property is owned by an institution organized for charitable purposes; actual use for a charitable purpose is required. We therefore turn to the operations of Auxilio Mutuo.

 The testimony discloses that Auxilio Mutuo operates a hospital with a complete paid staff. During 1941, 1,361 patients were discharged as cured, of whom 958 were dues-paying members, 357 were non-members who were almost all relatives of members and as such paid fees at the established rates less a discount, and 46 were charity patients. Visits to the hospital as patients were made during 1941 by 6,732 persons, of whom 6,432 were members, 142 were non-members who paid fees as aforesaid, and 158 were charity patients. These figures are typical of these and other services rendered in this and other years.

The operations of Auxilio Mutuo resulted in deficits until 1935 or 1936. Since that date it has operated at a profit. In 1941 the association had $797,000 in assets, of which $85,000 was in cash, $626,000 in real estate and $58,000 in furniture. In 1942 it made a profit of $36,000. During that year its receipts were $161,000, of which $114,000 was for dues, collected from over 3,000 members at the rate of three dollars a month.

By 1944 the assets of the society were $897,000, of which $127,000 was cash, $60,000 war bonds and $626,000 real property. A mortgage debt of $200,000, incurred in 1927 in connection with the construction of one of its buildings, was paid in full by 1936. By 1944, $200,000 more had been accumulated which has been earmarked for improvement and expansion of the facilities of the association.

No profits are ever distributed to the members. Receipts are devoted exclusively to the services rendered by Auxilio Mutuo and to expansion and improvement of its facilities, with the exception of some minor charitable contributions.

Emergency patients are treated free; the private patients are mostly relatives of members, with a few non-relatives recommended by members; the charity patients are almost all indigent Spaniards, although in some exceptional cases Puerto Ricans have been treated; and the members receive all the hospitalization, medical and surgical services they need in consideration of their monthly dues, which form the balk of the receipts.

Statutes exempting property used for charitable purposes from property taxes are common in the United States. The courts have resolved hundreds of disputes under these statutes. Annotations, 34 A.L.R. 634; 62 A.L.R. 328; 108 A.L.R. 284. See also, 22 A.L.R. 907; 83 A.L.R. 773. But none of these cases can be regarded as controlling. Statutes vary in language in different states. And each case must be finally decided on its own facts—the particular use of a specific piece of property.

Our statutes does not define a charitable purpose. Nor does it specifically exempt hospitals as such from the property tax. And the operation of a hospital is not intrinsically a charitable enterprise—many hospitals are charitable; others are strictly, or largely, commercial in character. However, we have no doubht that to render hospitalization or medical treatment free of charge to an indigent patient is an act of charity. Annotation, *Hospital as within tax exemption provision not specifically naming hospitals,* 144 A.L. R. 1483. And there are a number of cases which hold that a hospital operated by an institution not organized and operated for profit or other private advantage is using property for a charitable purpose despite the fact that some or even a majority of its patients pay for their treatment because they are able to do so, provided the funds derived in this manner are devoted to a charitable purpose. *Benton County* v. *Allen,* 133 P.(2) 991 (Ore. 1943); *Order of Sisters of St. Joseph* v. *Town of Plover,* 1. N.W.(2) 173 (Wis. 1941); 144 A.L.R. 1483; 34 A.L.R. 634, 637–38; 62 A.L.R. 328, 330; 108 A.L.R. 284, 286; 3 Scott on Trusts, § 372.1, p. 1997, § 376, pp. 2032–33.

The test is therefore not whether patients are treated free of charge. Rather the question to be determined is whether charity is the primary object of the institution. A hospital may be charitable even though many of its patients pay for treatment. By the same token, a hospital is not charitable, for purposes of tax exemption, where profit or private advantage is its primary object, merely because incidentally it renders some charitable services. *Prairie Du Chien San. Co.* v. *City of Prairie Du Chien,* 7 N.W.(2d) 832 (Wis. 1943); *State* v. *Willmar Hospital,* 2 N.W.(2d) 564 (Minn. 1942); *Gray St. Infirmary* v. *City of Louisville,* 65 S.W. 11 (Ky. 1901); cases collected in 144 A.L.R. 1483, 1489–91; 34 A.L.R. 634, 646–52; 62 A.L.R. 328, 331–33; 108 A.L.R. 284, 288–91.

Is Auxilio Mutuo operated for a charitable purpose? Counsel for Auxilio Mutuo calls attention to some cases, particularly *Portland Hibernian Ben. Soc* v. *Kelly,* 42 Pac. 3 (Ore. 1895), which apparently hold that where as in our case the statute does not require the charitable purpose to be public, societies which confine their activities to payment of sick and death benefits to members and their families are nevertheless exempt from taxation as private rather than public charitable enterprises. But whatever the distinction may be between public and private charity, we are of the view that the essence of charity, be it public or private, is that the donor and the recipient are not identical. Charity begins at home is an aphorism which is not meant to be taken literally in construing a tax exemption statute. And the testimony demonstrates beyond cavil that Auxilio Mutuo was originally established and has since that time been cooperatively operated primarily for the mutual benefit or advantage of the dues-paying members themselves rather than for the comparatively few indigent Spaniards who are treated free of charge.

We can see no difference, for purposes of this case, between this mutual benefit society and a burial society, an automobile club, a trade or marketing association, a mutual insurance company, or any other cooperative enterprise in which members contribute to a common fund which is used to render service to their members. A small amount of charitable or free emergency work does not convert such institutions into charitable enterprises. To hold otherwise would be to permit anyone operating and admittedly commercial private clinic to avoid taxation by doing a small amount of charitable work costing less than the amount of the tax. Of course we attribute no such cynical motive to the Auxilio Mutuo. The charity it renders to indigent Spaniards is undoubtedly done in good faith. But this does not change the fact that this charitable work is incidental to the primary object of Auxilio Mutuo—the non-charitable purpose of fur-

nishing cheap but good medical services to its members through cooperative ownership and operation of a hospital. Since this is operation for a private advantage, the property involved herein is not being used for a charitable purpose.

If Auxilio Mutuo did no charitable work at all, it could not successfully contend that its purpose of mutual medical aid for dues-paying members was charitable. It is in the same position as the private commercial hospitals which offer hospitalization or treatment whenever necessary to the general public for fixed monthly or annual fees. The fact that Auxilio Mutuo is owned cooperatively by its members rather than by a physician does not change the nature of its operations. And a small amount of charitable work done by either Auxilio Mutuo or such a private hospital does not lead to the conclusion that its property is used for a charitable purpose.

Auxilio Mutuo argues that the primary use of the property should not be the yardstick in this case because most of the cases holding to that effect arose under statutes requiring an exclusively charitable purpose,[1] whereas our statute omits the word "exclusively". It is difficult to tell in most of these cases how much significance the courts attach to the use of the word "exclusively". In any event, it is enough to decide the instant case to say that, despite the omission of the word "exclusively" from our statute, we are unable to conclude that our Legislature intended to exempt as property used for charitable purposes a hospital which was operated primarily as a mutual benefit association, merely because incidentally it treated a comparatively small number of indigent patients free of charge.

[1] For example, *Turnverein "Lincoln"* v. *Board of Appeals*, 192 N.E. 780 (Ill. 1934); *People* v. *Passavant Memorial Hospital*, 173 N.E. 770 (Ill. 1930); *People* v. *Rockford Masonic Temple Bldg. Ass'n*, 181 N.E. 428 (Ill. 1932); *People* v. *Jessamine Withers Home*, 143 N.E. 414 (Ill. 1924); *Rogers Memorial Sanitarium* v. *Town of Summit*, 279 N.W. 623 (Wis. 1938).

We do not quarrel with the cases cited by Auxilio Mutuo holding that an institution is nonetheless charitable despite the fact that its activities are limited to a class, sect, or group. *Powers* v. *First Nat. Bank of Corsicana, Tex.*, 137 S.W.(2d) 839, 846–47 (Tex. 1940) ; *Widows & Orphans' Home of O.F.* v. *Commonwealth,* 103 S.W. 354 (Ky. 1907) ; *In re Henderson's Estate,* 112 P. (2d) 605 (Calif. 1941) ; 34 A.L.R. 634, 645–46; 62 A.L.R. 328, 331; 108 A.L.R. 284, 288. The difficulty here is in finding the charitable activity. Auxilio Mutuo encompases a limited group of members who are engaged in mutually beneficial cooperative activity, not charity.

While not on all fours with the instant case, the reasoning and holdings in *Bnstline* v. *Basset,* 272 Pac. 696 (Idaho 1928) and *In re Farmer's Union Hospital Ass'n,* 126 P. (2d) 244 (Okla. 1942), support the conclusion we have reached. And organizations almost identical to Auxilio Mutuo have been denied exemptions from social security and unemployment insurance taxes under statutes exempting exclusively[2] charitable organizations from payment of such taxes. *La Societe Francaise, etc.* v. *California Employ, Com.,* 133 P. (2d) 47 (Calif. 1943) ; *United States* v. *La Societe Francaise De Bien. Mut.,* 152 F. (2d) 243 (C.C.A.) 9th, 1945) ; *Hasset* v. *Associated Hospital Service Corporation,* 125 F.(2) 611 (C.C.A. 1st. 1942), commented on in 55 Harv. L. Rev. 1055; *Smith* v.*Reynolds,* 43 F. Supp. 510 (D.Minn., 1942). Cf. *Boston Chamber of Commerce* v. *Assessors of Boston,* 54 N.E.(2) 199 (Mass. 1944), annotated in 152 A.L.R. 181.

In characterizing the nature of such organizations, the court said in the first *La Societe Francaise* case that (p. 47) "where people band together to purchase hospital care in event of illness, it is a 'business venture' rather than a 'charitable undertaking' and the beneficiaries thereof do not consider the benefits received to be 'charity'." In the *Has-*

---

[2] As already indicated, we do not regard the absence of the word "exclusively" from our statute as decisive under the circumstances of this case.

*sett* case our Circuit Court said at p. 614: "It is difficult to distinguish the plaintiff corporation from a mutual insurance company or an employee benefit plan.' Here we have what is essentially a business arrangement under which a group of people have banded themselves together to purchase at rates as low as possible care in the event of sickness or accident." And in the second *Societe Francaise* case the court used similar language at p. 245: "No member of the Society in receiving the more adequate treatment at a lower cost would consider himself and object of charity but rather that he was reaping the benefit of a wise decision in electing to become a member of an organization which, through its well-managed business activities, had made the added results available to him."

Finally, in the *Reynolds* case the court points out that as in our case a small amount of charitable work does not change the nature of such an enterprise, saying at p. 514: "There is nothing in the evidence to indicate that the major part of the activities of the Association were charitable or benevolent. True, some charity cases were taken care of, but that fact does not in itself make the Association a charitable organization."

We do not regard the fact that the members of Auxilio Mutuo receive no dividends as controlling. While they make no profit as such on their dues, the members do obtain cheaper and better medical service by virtue of the dues they pay as members. This is as substantial a private advantage to the members as the payment of profits in the form of dividends. *United States* v. *La Societe Francaise De Bien. Mut.*, *supra*, p. 245; *Smith* v. *Reynolds, supra*, p. 514.

The Tax Court relied on cases holding that hospitals were operated for a charitable purpose in spite of the fact that the majority of their patients paid for the services rendered. *Lutheran Hospital Ass'n of South Dakota* v. *Baker*, 167 N.W. 148 (S.D. 1918); *In re Rust's Estate*, 12 P. (2d) 396 (Wash. 1932); *Corporation of Sisters of Mercy* v. *Lane County*, 261

Pac. 694 (Ore. 1927); *Board of Com'rs of Tulsa County* v. *Sisters of The Sorrowful Mother,* 283 Pac. 984 (Okla. 1930). We have already distinguished such cases. Those organizations are considered as charitable because the receipts from paying patients are used to defray the expenses involved in treating charity patients, with no profit or private benefit to anyone. Here the receipts are primarily—and almost entirely—utilized for the benefit of the members of Auxilio Mutuo and their paying relatives who, by their cooperative action, receive cheaper and better medical service.

*Candal et al.* v. *Soc. Esp. de Auxilio Mutuo,* 37 P.R.R. 811, and *Carrasquillo* v. *Am. Missionary Association,* 61 P.R.R. 837, are not in point. They are concerned with a different question which has no bearing on the meaning of § 291(e) of the Political Code.

It must be confessed that among the proliferation of authorities found in this field there are cases containing language which furnishes considerable comfort to Auxilio Mutuo. Our Circuit Court has decided two cases which seem difficult to reconcile. Compare *Hassett* v. *Associated Hospital Service Corporation, supra,* with *United States* v. *Proprietors of Social Law Library,* 102 F.(2d) 481 (C.C.A. 1st, 1939). But we believe the thread of principle which we have endeavoured to trace through this confusing maze is sustained both by the cases and the purpose of the Legislature in granting this exemption.

It may be a wise social policy to encourage cooperatives in the medical and other fields by exemption from all or some taxation. Our Legislature recently authorized organization of certain types of cooperative associations and granted them property and income tax exemptions. Sections 26, 27, Act No. 291, Laws of Puerto Rico, 1946. Congress and our Legislature have both exempted from the income tax (a) certain types of mutual or cooperative associations, including those providing for payment of sick benefits, and (b) corporations

organized and operated exclusively for charitable purposes. 26 U.S.C.A. § 101 (3), (6); § 29, Act No. 74, Laws of Puerto Rico, 1925. When Congress incorporated "Group Hospitalization, Inc." for operation in the District of Columbia, it granted an exemption from all taxes except real estate taxes. 53 Stat. 141. We make no comment on whether property belonging to hospital service associations like the Blue Cross (See Act No. 152, Laws of Puerto Rico, 1942, and Act No. 466, Laws of Puerto Rico, 1946) is exempt from property taxation. Assuming, without deciding, that it is not, those organizations and Auxilio Mutuo may be able to convince the Legislature that it is in the public interest to grant such organizations and Auxilio Mutuo property tax exemptions. That is for the Legislature to determine. But we cannot hold that the property of Auxilio Mutuo is being used for a charitable purpose and is therefore exempt from property taxation under § 291(e) of the Political Code when the record discloses that Auxilio Mutuo is operated primarily as a mutual aid society for the benefit of its dues-paying members rather than as a charitable institution.

The decision of the Tax Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

DISSENTING OPINION DELIVERED BY MR. JUSTICE TODD, JR.

November 22, 1946.

As it is admitted in the opinion of the majority, the decisions on this question are divided. I have read the cases cited by the Tax Court and, in my opinion, they warrant and support the conclusion which it reached. The law does not require that the institution be devoted *exclusively* to charitable purposes in order to be exempt and, even under statutes which so provide, it has been held that they are, especially when the institution is organized for non-pecuniary purposes and the members do not receive any dividend.

634

Sec to that effect *In re Rust's State,* 12 P. (2d) 396 (Wash. 1932); *Lutheran Hospital Ass'n of South Dakota* v. *Baker,* 167 N.W. 148 (S.D. 1918). (In the latter case 95 per cent were paying patients and 5 per cent were charity patients, even though the statute used the words "used exclusively for charitable purposes.") *Corporation of Sisters of Mercy* v. *Lane County,* 261 Pac. 694 (Or. 1927); *Board of Commissioners of Tulsa County* v. *Sisters of the Sorrowful Mother,* 283 Pac. 984 (Okla. 1930); *Powers et al.* v. *First Nat. Bank of Corsicana, Tex.* 137 S.W. (2d) 839 (Tex. 1940); *Widows' and Orphans' Home of O. F.* v. *Commonwealth,* 103 S.W. 354 (Ky. 1907); *In re Henderson's Estate,* 112 P. (2d) 605 (Cal. 1941); *United States* v. *Proprietors of Social Law Library,* 102 F. (2d) 481 (C.C.A. 1, 1939); Annotations in 34 A.L.R. 641; 62 A.L.R. 331, and 108 A.L.R. 288, and especially the dissenting opinion of Mr. Justice Magruder in *Hasset* v. *Associated Hospital Service Corporation,* 125 F.(2d) 611 (C.C.A. 1, 1942).